The prisoner was tried on the civil side of the Supreme Court, at a circuit held in the county of Broome, in March, 1867, and convicted of the crime of arson, and the General Term denied a new trial, and the defendant was sentenced to the State prison. He now brings a writ of error to this court. It is claimed that the court upon the trial erred in allowing the people to prove the confessions made by the prisoner to the witness, Martin, who at the time was a policeman. It is also urged that the court erred in permitting the same witness to testify to another conversation with the prisoner, in which conversation the prisoner requested the witness to go and request the prisoner's father to visit him at the jail. It is also claimed that the court erred in permitting the witness to testify as to what occurred when the father and the counsel of the prisoner were present; and it is also claimed that the court erred in permitting the people to give evidence of a distinct and different felony committed by the prisoner other than that charged in the indictment, and for which he was upon trial. The witness did not have the prisoner in his charge, but went into the room occupied by him in the jail. He testified, that, as he *Page 304 
went into the room, he made the remark that he (the prisoner) was in a bad fix, and had got caught at last, or something like that; and that the witness then asked him to tell who the others were, and in the course of the conversation with the prisoner he asked the witness if he had got Delany; that he told him no. The prisoner then asked him if he had got Delany and David Gray; and the witness asked the prisoner if they knew any thing about it, and he said they did. The witness then asked the prisoner what was the first fire he was interested in. He said the first fire that he had any thing to do with was his father's barn, and that the next was Pugsby's barn, near by; and he said that he and David Gray set that on fire. The witness testified that he made no promise to the prisoner, nor held out to him any inducements whatever to make the confession.
The confessions of the prisoner were wholly voluntary, and made uninfluenced by any threat, menace, promise or other influence. It is no ground of objection that they were made to a policeman. He had not arrested the prisoner, and did not have him in his custody at the time of this conversation.
SELDEN, J., in the case of The People v. McMahon (15 N.Y. 384), very clearly states the principle which should govern in the admission of the confessions of persons charged with crime. He says: "The first distinction which the law makes is, between a statement or declaration made before, and one made after, the accused was conscious of being charged with or suspected of the crime. If before, it is admissible in all cases, whether made under oath or without oath, upon a judicial proceeding or otherwise, but if made afterward, the law becomes at once cautious and hesitating. The inquiry then is, was it voluntary? For, unless entirely voluntary, it is held not to be admissible." He then proceeds to define what is meant by the term voluntary. He says: "The word is evidently not in all cases used in contradistinction to compulsory, because a confession obtained by either threats or promises from any one having authority over the accused or concerned in the administration of justice, *Page 305 
is uniformly held to be inadmissible. However slight the threat, or small the inducement thus held out, the statement will be excluded as not voluntary. It is plain, therefore, that, in such cases at least, by `voluntary' is meant proceeding from the spontaneous suggestions of the party's own mind, free from the influence of any extraneous disturbing cause." And the learned judge states the reason of this exclusion to be, that where the law rejects a disclosure, made under oath, by a person charged with crime, it does so, not because any right or privilege of the person has been violated, but because it is deemed unsafe to rely upon it as evidence of guilt. And this is strongly to be inferred from that class of cases in which it has been held, that although a confession has been obtained by stratagem, by fraud, by violation of confidence, or even of an oath, still, if reliable, the law will avail itself of it. And he cites in support of this principle, Barley's case (cited in Phillips on Ev. 427, as having been decided in Easter Term, 1818, mentioned also by Roscoe Starkie, who say the conviction was afterward approved of by the judges), where the prisoner was told untruly and as an artifice, when in jail, that his accomplices were in custody. Upon hearing this, which was said to induce a confession, he confessed. The confession was admitted in evidence. In Rex v.Darrington (2 Car. Pa. 148), the prisoner, while in jail, having written a letter to his father, asked the turnkey to put it into the post, which he promised to do; but, instead of this, the turnkey delivered it to the magistrate. The letter was offered in evidence and objected to, but admitted. So in Rex v.Shaw (6 Car. Pa. 372), where the person to whom the confession was made had taken an oath that he would not reveal it, this was held to be no objection to the evidence.
A confession is admissible, although it is elicited by questions put to the prisoner, by a magistrate, constable, or other person. The leading authority on this point is Wilde'scase (1 Mo. C.C.R. 452). The person having the prisoner (a boy about fourteen) in charge, told him to keel down and *Page 306 
tell the truth in the presence of the Almighty. He did so, and confessed to pushing the children, with whose murder he was charged, into the pit. At a meeting of all the judges in 1835, four only absent, they held that the confession was strictly admissible. In Thornton's case (1 Mo. C.C.R. 27, Trinity Term, 1824), which came before the judges, a confession was held admissible, made by a boy only fourteen years old, to a chief officer of police, by whose direction he had been apprehended without a warrant, and obtained in answer to questions put to him by the officer, and at a time when the boy had been without food for nearly an entire day. Seven of the judges held the confession rightly received, for the reason that no threat or promise had been used. Three judges were of a contrary opinion. In Gibney'scase (Jebb's C.C. before the twelve judges of Ireland, p. 15), decided in 1824, a confession was unanimously held admissible, which was elicited by questions put to the prisoner by two constables, in whose custody the prisoner then was, on his way to jail. One asked him: "Did you kill the child?" The other: "Were you not a terrible man to do such a thing?" Both these questions were asked before the confession was made. The constables told him several times before he confessed, what a terrible offense he had committed, that it was a terrible thing for a man to murder his own child. (For other cases of a similar character, see Joy on Confession, p. 34, et passim, Law Library, vol. 40.)
So, also, a confession is admissible, although it is elicited in answer to a question which assumes the prisoner's guilt, or is obtained by artifice or deception.
In Thornton's case (1 Mo. C.C.R. p. 28), a chief officer of police, by whose directions the prisoner had been apprehended, said to the prisoner in custody, that, "from the falsehoods he had told and the prevarications he had made, there was no doubt but that he set the premises on fire;" and, after questioning him whether any person had been concerned with him, added, "he would not have told so many falsehoods, if he had not been concerned in it," and again asked "whether any person had induced him to do it." The *Page 307 
prisoner then made a confession. Seven out of the ten judges held that the confession was rightly received. Lord DENMAN, Ch. J., inArnold's case (8 Car. P. 622), says, that the true test of the admissibility or inadmissibility of a confession is, whether any inducement was held out to the prisoner to confess himself,untruly, guilty.
Applying these principles to the confessions made by this prisoner, we see that none of them were overlooked or misapplied in the admission of them. The utmost that can be said of any remark made by the officer, was that it assumed the prisoner's guilt. This, we have seen, furnishes no ground for the rejection of the confession. There being no inducement, promise, threat or menace used to obtain the confession, or influence its being made, it is very clear, upon principle and authority, that it was properly admitted.
We do not see that any rule of evidence was violated in admitting the answer of the witness, that Becker, the counsel of the prisoner, was present in the jail with him at the same time the witness and the father of the prisoner were present. I do not understand the witness as detailing any thing the prisoner said to his counsel, and he must certainly have been asked that, or attempted to give that, before the principle could be invoked that such statement was a privileged communication. Such privilege has no application to any thing that was given in evidence or offered to be given in evidence upon this trial. Besides, any statement made by the prisoner to Becker, his counsel, in the presence and hearing of the prisoner's father and of the witness, could not partake of the character of a privileged communication.
Neither is there any foundation for the objection now urged that the judge upon the trial admitted evidence of a distinct felony not charged in the indictment, to wit, that the prisoner burned his father's barn. When the witness was asked about a further conversation with the prisoner, he testified: "I then asked him what was the first fire he was interested in." This was objected to, received and excepted to. The witness answered: "He said the first fire was his father's barn that he had any thing to do with, and that he *Page 308 
and Jerome Dean" — Here the witness was stopped, and did not further answer the question. When the witness was again asked directly what the prisoner said about he and Dean setting the fire, it was objected to on the ground that the question relates to another offense and one for which he was not on trial. The court sustained the objection and excluded the evidence. It is thus seen that the moment the attention of the court was called to the ground of the objection the evidence was excluded. And if the counsel for the prisoner had thought the former answer given in part was obnoxious to the same objection it was his duty to have moved the court to strike out that testimony, and if the same had been refused have taken an exception.
On a careful consideration of all the exceptions taken upon the trial, we think them untenable, and that the judgment of the Supreme Court must be affirmed.