## The State of Minnesota

### vs.

### George W. Staley.

It is a matter of discretion in the Court to permit leading questions to be put by a party to his own witness, and although this a legal discretion that may be reviewed, this Court will not interfere, except in a clear case of abuse or prejudice.

The admission of immaterial evidence, where it is manifest that it was not prejudicial to the defendant, is not ground for a new trial.

A confession, made by a person charged with crime, is not admissible in evidence, if it appears to have been induced by the promise of any advantage, or threat of any harm, of a temporal or worldly nature, made by a person in authority. The officer making the arrest is, within the rule, a person in authority.

If proof of a confession is objected to on the allegation that it was improperly obtained, the judge is to determine, as a preliminary question, whether the allegation is true, and his decision thereon, though subject to review, will not be reversed unless it is manifestly against the weight of evidence. The admission of the confession in such case, is, to some extent, in the discretion of the Court.

The fact that a confession was made in answer to a question assuming the guilt of the person confessing, or was obtained by artifice, falsehood, or deception, or procured by a caution to the accused to tell the truth, if he said anything, does not render the confession inadmissible in evidence.

Unless there is a positive promise of favor, made or sanctioned by a person in authority, or the inducement held out is calculated to make the confession untrue, it will be admissible.

Where it is sought to discredit a witness, by showing he has made statements inconsistent with his testimony, it is only allowable to contradict him as to matters or statements to which his attention has been particularly called ; and when an impeaching witness has done this, and the person calling him seeks to draw out further conversation had at the time, such conversation is properly excluded.

When an exception is taken to the ruling of the Court sustaining an objection to a question, unless what is sought to be proved is made to appear, and it is something material, the rejection of which, as evidence, would be prejudicial to the party excepting, there is no ground for reversal.

A witness can be discredited by contradiction, only in relation to matters material to the issue on trial.

On the trial of a person charged with murder, a question arose, during the progress of the argument, after the parties had rested, as to whether the pistol with which it was claimed the homicide was committed, had been introduced in evidence, testimony tending to identify the pistol having been received; and the court decided that although it had been examined by the jury, and had been treated on the trial as actually in evidence, yet it had not been formally introduced. On application of the prosecution, it was then received in evidence, and the defendant offered ample time and opportunity to procure and introduce any further testimony which he might desire by reason of its reception. *Held*, that this was a matter within the discretion of the Court, and that such discretion was properly exercised.

The act of March 6, 1868, which allows a person charged with crime to testify in his own behalf, and provides that his neglect or refusal to testify, shall not create any presumption against him, and forbids the prosecuting attorney from alluding to or commenting upon such neglect, does not forbid the resort to any argument or evidence to impeach such *witness*. The party is not to be prejudiced by his silence, but if he become

The State of Minnesota v. Staley.

a *witness*, his veracity may be attacked by any legitimate argument, whether it refers to what he has said, or refused or neglected to say.

A mere general exception to a general charge of the Court to the jury amounts to nothing. An exception should only be taken to some particular point of law, as given by the Court. An exception to the whole charge, in these words, " to all of which the defendant excepts," is not sufficient.

It is proper for a jury to consider the circumstances under which a confession is made, with a view of determining what weight should be given to it ; but it is not their province to reject a confession ; nor is it the law, that if a party making a confession is not entirely free from fear, or wholly uninfluenced by present fear, or hope of favor, that the Court should reject his confession ; if voluntary, it is receivable, whatever may be the motives of the party by whom it is made.

It is not error for the Court to refuse to give in charge to the jury a mere abstract proposition of law, inapplicable to the facts of the case, though it may be correct.

The proposition, that the charge against a person accused of crime, need only be established beyond reasonable doubt, discussed and applied.

The sufficiency of evidence to justify a verdict, considered.

The defendant was indicted with John Whitman and Charles Edwards, for the murder of Frederick Ableitner. The defendant was tried separately in the District Court for Olmsted county, found guilty, and sentenced. After verdict, and before judgment, defendant moved for a new trial, which was denied; he appeals to this Court.

The case is sufficiently stated in the opinion of the Court.

R. A. JONES for Appellant.

F. R. E. CORNELL, Attorney-General, for Respondent.

*By the Court.*—WILSON, Ch. J.—The defendant having been convicted in the District Court of Olmsted County of

the murder of Frederick Ableitner, made a motion for a new trial, which was denied, and from the order of denial he appealed to this Court. We shall examine the several grounds on which he claims to be entitled to a new trial, in the order in which they were stated by his counsel.

The wife of the deceased having been called as a witness for the State testified, that three men came to the house after dark, and having called her husband out, knocked him down and shot at him; that he fell inside the door and tried to shut it, but they would not let him. The prosecution then asked the witness the question, "Did any of the shot hit the door?" To which she answered: "The shot went through the door." The prosecution then asked the following question: "Did you see any signs of blood?" to which an affirmative answer was given. The defendant objected to each of these questions as leading, and excepted to the ruling of the Court admitting the answers. It is a matter of discretion with the Court to permit leading questions to be put by a party to his own witness. 1 *Greenleaf Ev.*, Sec. 435; *Moody vs. Rowell*, 17 *Pick.*, 499; *Budlong vs. Van Nostrand*, 24 *Barb.*, 25; 2 *Phillips Ev.*, (4th *Ed.*) 891-2, *and note*; *York vs. Pease*, 2 *Gray*, 282; *State vs. Lull*, 37 *Maine*, 240; *Barton vs. Kane*, 17 *Wis.*, 37. And though this is perhaps a legal discretion which may be reviewed, this Court will not interfere except in a clear case of abuse or prejudice. *Passmore vs. Brighton*, 34 *Maine*, 240; *Steen vs. Aylesworth*, 19 *Conn.*, 244. Abuse of discretion, or prejudice to the defendant, cannot be pretended in this case. The witness was examined through an interpreter, and, as the testimony shows, was not very intelligent, or quick of apprehension. For this reason it was not improper for the Court to permit the questions to be framed so as to call her attention directly to the subject of inquiry.

The second objection urged is based on the ruling of the Court in receiving the testimony of Thomas Stephenson, a witness called by the State. He testified: "Last fall I resided in the town of Dover, in this County, and was a Justice of the Peace. I knew the defendant. He was examined before me on charge of murder of Ableitner; the examination was at Ableitner's house." * * The State asked the witness this question: "Did Ableitner make any request of you in regard to making his will, or in regard to the examination of Staley?" to which the defendant objected "as immaterial, and that there was no proof that Ableitner was then at the point of death, and so believed." The Court overruled the objection and the defendant excepted. The witness answered, "yes."

The State asked the witness this question: "State what he said upon the subject of dying?" To which the defendant made the same objection as before, and the Court overruled the objection and the defendant excepted. The witness answered: "1 don't know as he said anything about his dying."

The State asked the witness this question: "What was his condition at the time?" The defendant objected that the witness was incompetent and the question immaterial. The Court overruled the objection and the defendant excepted. The witness answered: "I was called there in the evening of October 30th, by John Frazier. I got there about two o'clock at night. I found Ableitner on the bed. I examined the wound. He was groaning terribly and apparently suffering great pain. His abdomen was very much swollen. His attendants were administering injections, once in fifteen minutes, to produce evacuation of the bowels. There was no doctor there. The medicine was given by prescription of Dr. Wright. The wound was in the region

of the navel, on the left side.   He wanted me to make his will, and told me why."

The State asked the witness this question:   "What did he say about it?" to which the defendant objected, that no foundation was laid, and it was irrelevant.   The Court overruled the objection, and the defendant excepted, and the witness answered:   "He said he had been shot, and he wanted to make a disposition of his property in case he should die from his wound.   That was all he said on the subject.   I thought best to take his affidavit, so that it could be used in case he died.   Staley's examination was the same day in the afternoon.   Ableitner was present in bed at the time.   John Coole acted as Staley's attorney, and cross-examined Ableitner."

Though part of this evidence at least seems to be immaterial, manifestly none of it was prejudicial to the defendant.   From the answers to the first two questions, no inference could be drawn as to his guilt or innocence, and the answers to the third and fourth, only tended to establish a fact otherwise proven by indubitable and uncontradicted evidence.   If incompetent—which we admit only for the purpose of this argument—it was merely immaterial, and not ground for a new trial.

The defendant made a confession, oral and written, to the admission of which in evidence he objected on the ground that it was not voluntary.   The rule seems well settled, that if any advantage is held out, or harm threatened, of a temporal or worldly nature, by a person in authority, the confession induced thereby must be excluded.   *Reg. vs. Baldey* 12 *E. L. & Eq.* 590; *State vs. Grant*, 22 *Maine*, 171; *Com. vs. Moony*, 1 *Gray*, 461-3.   Page, the officer who made the arrest, and by whom the inducements are alleged to have been held out, is within the rule, a person in authority.   If

proof of the confession is objected to on the allegation that it was improperly obtained, the Judge is to determine as a preliminary question whether the allegation is true in point of fact, and his decision of the question is, we think, subject to be reviewed by this Court. But the rule is well settled, that this Court will in no case reverse the decision of a lower court on a question of fact, unless it is manifestly against the weight of evidence. (The same rule obtains in respect to the finding of facts by a court, that does to the verdict of a jury ; it must be clearly erroneous before it is set aside.) *See* 2 *Ohio State Rep.*, 583 ; *Humphrey vs. Havens*, 12 *Minn.*, 307 *and cases there cited.*

We are not called upon to determine whether the burden is on the State to show affirmatively that the confession was voluntary, or to negative any inducement to make it, for the Attorney General seems to have conceded that ; and the evidence on the affirmative and negative of this preliminary question was all offered before its determination by the Court. The Court having received the confession, must have determined, as a matter of fact, that it was voluntary, and the question presented to us is, did it clearly err in this determination ? Page was called as a witness and testified : " I told him if he was going to say any thing he must say the truth.   *   *   I think we all told him everything depended on Edwards being caught, as we believed him the most guilty ; " and denied that beyond what is expressed or implied by these words, there was any inducement offered. Several witnesses were called to contradict him, who testified that he had admitted that he had held out other inducements, and the defendant, called and examined on his own behalf as a witness on this preliminary question, testified : " I saw Page during the day (of the arrest). He spoke to me about confessing during the day ; first time

was between one and two o'clock, right after dinner. He at this time asked me where Edwards was. I told him I did not know. Webb was present. Page said to me that Whitman had made a confession, and stated some things that he said Whitman had stated to him. He then told me he had seen my father and mother and sister, and it was their request that I should tell him all about it. He then said Charley has got you in many a scrape, meaning Edwards. I told him he had not. He then went on to state more conversation he said he had with Whitman; said Whitman had laid the blame entirely on me; and now sir; said he to me, ' the one of you that tells the straightest story shall have the privilege of turning State's evidence.' I was twenty-two years old last March. " The written confession of this witness was exhibited to him on his cross-examination, and his signature thereto admitted, but he did not deny its truthfulness. Where his statements and those made by Page are at variance, it was for the Court below to say which of them was entitled to credence, and its determination of the question on a conflict of evidence, unless manifestly against the weight of evidence, is final. Nor is it very clear on which side was the preponderance of evidence. If the latter witness was contradicted by others, the former was discredited by the statements of his own confession. But in any view that may be taken of it, there was some evidence reasonably tending to sustain the finding and decision of the Court, which is sufficient. The admission of the confession is in such case to some extent in the discretion of the Judge. *Green. Ev., Sec.* 219. No recent case, I think, goes so far as to hold that such statements as it is admitted were made by Page, render subsequent confessions inadmissible as evidence. The earlier English cases that perhaps go to that length, have been modified or overruled. *Reg. vs.*

*Baldey,* 12 *E. L. Eq.,* 596; *Wharton's Am. Cr. Law,* (6 *Ed.*) *Sec.* 685, *and cases there cited; Roscoe's Cr. Ev.,* 39 *et seq.*  The fact that the confession was made in answer to a question assuming the guilt of the person, or was obtained by artifice, falsehood or deception, or preceded by a caution to the accused, to tell the truth if he said anything, does not render the confession inadmissible in evidence. *People vs. Wertz,* 37 *N. Y.,* 303; *Wharton's Cr. Law,* 690, 691; 1 *Phillips Ev.* (4th *Ed.*) 558–9; *State vs. Kirby,* 1 *Strobhart,* 378; *Roscoe Cr. Ev.,* 47; *State vs. Grant,* 9 *Shepley,* 174.  Unless there is a positive promise of favor, made or sanctioned by a person in authority, or the inducement held out is calculated to make the confession an untrue one, I think it may be laid down as a rule based on reason, and deducible from the late authorities, that the confession will be admissible.  See *Wharton Cr. Law, Sec.* 686 & 687, *and cases cited in notes; Com. vs. Tuckerman,* 10 *Gray* 173; *State vs. Grant,* 9 *Shepley,* 171; *Reg. vs. Thomas,* 7 *Car. & P.,* 345.  If we are right in supposing this to be the law in such cases, there was no error in receiving the oral confession.

Afterward the Attorney for the State offered the written confession made a few days later : to the admission of which the defendant objected on the ground that it was not voluntary.  If the oral confession was admissible, it follows that the one reduced to writing was also, there having been no intermediate threat of harm, or promise of favor, or act done calculated to induce the defendant to make an untrue confession, and it appears that Hill, the Justice of the Peace before whom the confession was made, and by whom it was reduced to writing, cautioned him "if he had any statement to make, it might and probably would be used against him on his trial ; that he was under no obligation to make one,

or to answer any question that might be put to him." We fail to discover anything in the circumstances under which the confession was made calculated to intimidate the accused, or influence him to make an untrue statement. Page seems to have resorted to falsehood and deception, in stating that Whitman had made statements which he had not, but we have seen this did not render the confession inadmissible. In the reception of the confessions, therefore, we think there was no error.

The witness, Page, having testified that he held out no inducements to the accused to confess, the counsel for the defendant called witnesses to discredit him, by showing that he had admitted in a conversation with the accused in their presence, the making of statements inconsistent with his evidence on that point.

His attention having been first called to the alleged inconsistent statements, these witnesses were asked whether they had not heard him make them, and answered in the affirmative. They were then asked to repeat the conversation. The Attorney General objected that this was not competent, and the Court sustained the objection. These witnesses having been called for the sole purpose of impeaching Page, it was only allowable to contradict him as to matters or statements to which his attention had been particularly called, and this having been done, any further conversation was not evidence, and was properly excluded. But admitting that the answer was erroneously excluded, the bill of exceptions does not show that the ruling prejudiced the appellant, and the error therefore is not ground for reversal. To justify a reversal of judgment, the record must show affirmatively material error. When a question is asked which is objected to, and the objection sustained, in taking an exception it should be made to appear what it

was proposed to prove, which must be something material, and the rejection of which as evidence would be prejudicial to the party excepting. *Stull vs. Wilcox*, 2 *Ohio St.*, 570; *Hollister vs. Rezwon*, 9 *Ohio St.*, 1; *Gandolph vs. State*, 11 *Ohio St.*, 114.

When the evidence was being presented to the Court on the preliminary question whether the confession was voluntary, the defense offered to show by one Poole, who was called as a witness, for the purpose of impeaching Page, " That during the day at Neilsville (when and where the defendant was arrested) the defendant for several hours was in the sole custody of Webb, out of sight and hearing of Page, and that this witness discovered and arrested Staley, and that Page did not;" to which the counsel for the State objected as immaterial and incompetent, and the Court sustained the objection, and the defendant excepted. Even if it is admitted that it was allowable on the trial of this preliminary question, to offer impeaching evidence,—which seems to admit of great doubt—we are of the opinion that the Court properly refused to hear the evidence offered. A witness can only be contradicted on facts material to the issue; and the matter on which Poole was called to contradict Page was wholly irrelevant to the issue which the Court was then trying.

During the progress of the argument the defendant's counsel claimed that the pistol had not been offered and introduced in evidence; whereupon the prosecution insisted that it had, and had been examined by the jury. The Court decided that although it had been examined with the bullet by the jury, and had been treated on the trial as though actually in evidence, yet it had not been formally introduced. On application of the prosecution the same was then received in evidence, and the Court at the time informed the de-

fendant if he desired to introduce any further testimony by reason thereof, he could do so, and the Court would give ample time to get or send for any such testimony, at the expense of the prosecution, to which the counsel for the State consented. The defendant objected to the reception of the pistol, " that the same had not been identified, and both parties having rested it was now improper." The Court overruled the objection, and the defendant excepted. It was in the discretion of the Court to admit the pistol in evidence. There had been evidence offered tending to, and which we think did identify it; but whether the evidence on that point was sufficient, was a question for the jury. The pistol had been handed to and examined by the jury, and whether it was formally introduced in evidence or not, it was clearly within the discretion of the Court to admit it at the time and under the restrictions indicated, and we have no hesitancy in saying that the discretion was properly exercised.

In the argument of the Attorney General, it appears by the case, that " He called attention to the fact that the defendant had availed himself of his privilege to be a witness in his own behalf, and had testified upon one branch of the case, and when questioned by the prosecution in regard to his connection with the murder of Ableitner, he had refused to answer the question, and also called attention to the fact and commented upon it, that the defendant was a competent witness for himself upon the merits, and had refused to be a witness upon the main issue in this trial, whereupon the defendant asked that it be entered upon record in the case, and an exception be entered thereto on the part of the defendant," and the Attorney-General consenting, it was so ordered. It is argued by the defendant that this was prohibited by statute, *Chap.* 70, *Laws* 1868, and therefore is a ground for a new trial.

The law referred to is as follows:  " That *Section seven* (7), *Chapter seventy-three* (73), *of the General Statutes*, be amended so as to read as follows : All persons, except as hereinafter provided, having the power and faculty to perceive and make known their perceptions to others, may be witnesses; neither parties nor other persons who have an interest in the event of an action are excluded, nor those who have been convicted of crime, nor persons on account of their religious opinions, or belief; although in every case the credibility of the witnesses may be drawn in question.    And in trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, the person so charged shall, at his request, but not otherwise, be deemed a competent witness; nor shall the neglect or refusal to testify create any presumption against the defendant, nor shall such neglect be alluded to or commented upon by the prosecuting attorney or by the courts."    The defendant, it will be borne in mind, was examined as a witness on his own behalf on the preliminary question as to whether his confession was or was not voluntary, and on that question his testimony was directly opposed to that given by Page.    It was therefore an important consideration for the jury whether the witness was deserving of credence.

We think the law of 1868 does not forbid the resort to any argument or evidence to impeach the *witness*.    The *party* is not to be be prejudiced by his silence, but if he becomes a *witness*, his veracity or credibility may be attacked by any legitimate argument, whether it refers to what he has said, or refused, or neglected to say.    In other words, while the legislature recognized the fundamental law, that no person should be compelled, in any criminal case to be a witness against himself, it does not forbid or lessen the

power and right of the State to impeach the credibility of *any witness.* The defendant, having been a witness, and having admitted the making of a confession, which, if believed, must certainly have affected his credibility before the jury, it was competent for the Attorney General, for the purpose of discrediting him, to refer to and comment upon the fact that he did not deny the truth of his confession, though he was a competent witness for that purpose.

The charge given by the Court on its own motion, is admitted to be unexceptionable, except in the concluding sentence or sentences. To it the defendant excepted, as appears by the case, in the words, "*to all of which the defendant excepted.*" An exception can only be taken to some particular point of law ; a mere general exception to a general charge amounts to nothing. *Lansing vs. Wiswall,* 5 *Denio,* 218–19 ; *Jones vs. Osgood,* 2 *Selden,* 233 ; *Caldwell vs. Murphy,* 11 *N.Y.,* 416 ; *Oldfield vs. N. Y. & Harlem R.R. Co.,* 14 *N. Y.,* 312–313. The exception in this case is of the most general kind, and the correctness of the principal part of the charge is unquestioned ; hence the case stands as if no exception had been taken, and the defendant is presumed to have waived any error that may have been committed. It is with regret that we apply this well settled rule of practice in a capital case, but it is essential to the administration of justice. It is possible that we might feel it our duty to grant a motion for a new trial, if it appeared that there had been errors committed prejudicial to the defendant, even without objection from his counsel ; but for technical error, not excepted to, and to which the attention of the Court was not particularly directed, the rule is clearly otherwise, both in this Court, and in the District Court. But we are satisfied that even if there was the error in the

The State of Minnesota v. Staley.

charge which the defendant's counsel alleges, it did not prejudice the accused.

The exception to the ruling of the Court, refusing to give the third, fourth and fifth instructions, asked by the defendant, was insufficient. But, passing by this objection, we think that each, as well as the sixth instruction, was properly refused. They are in these words :

" 3d.    Unless the jury are satisfied from the evidence beyond a reasonable doubt, that the confessions offered were made voluntarily, without fear or promise or hope or favor, they must exclude the confessions from their minds; and if the question of fear or favor operating upon the mind of the defendant is left uncertain, the jury ought to reject the confessions, and this rule applies as well to direct as to implied confessions.

4th.    Confessions should be received, if received at all, with great circumspection and caution; any promise of favor, or threat made to defendant, or if the circumstances surrounding the defendant were calculated to produce fear, or so that defendant was not entirely free from fear at the time of the alleged confession, then the jury should reject the confession and not consider it.

5th.    If the jury are not satisfied beyond a reasonable doubt, or if it is uncertain whether the confessions at St. Charles were the result of previous promises of favor, or inspired by present fear or hope of favor from the surrounding circumstances, then the jury ought to reject the confessions.

6th.    If the jury find from the evidence that the confessions made *prior* to the alleged confessions at St. Charles, were made under promises of favor or advice by the officer having him in charge, and that the alleged confessions at St. Charles were made in the presence of the *same officer*,

in pursuance of an *agreement* between defendant and said
officer to so make it, then it must be rejected by the jury,
unless they shall find from the evidence beyond a reason-
able doubt, and so as not to leave it uncertain that the *mind
of defendant* was entirely free from the effect of such prom-
ise and agreement by a warning given *before he made the
confession;* and such warning must be something more than
the usual notice, that his confession might, and probably
would, be used against him."

It is proper for a jury to consider the circumstances un-
der which a confession is made, with a view of determining
what weight should be given to it; but it is not their prov-
ince to reject a confession. Nor is it the law, that if a party
making a confession, is not entirely free from fear, or wholly
uninfluenced by present fear, or hope of favor, that the
Court should reject his confession. Confessions are ordi-
narily made with a hope of favor, or under circumstances
calculated to produce fear. It is, perhaps, the general rule,
that a person who fully and freely confesses his guilt—es-
pecially where this may assist in the detection and convic-
tion of others—hopes for favor on that account. And as
confessions are usually made by persons under arrest on a
criminal charge, they are certainly made under circum-
stances calculated to produce fear. If voluntary, they are
receivable, whatever may be the motives of the party in
making them, and they are not considered involuntary, be-
cause made under the circumstances supposed. *See People
vs. McMahan*, 15 *N. Y.*, 384 ; *People vs. Wertz*, 37 *N. Y.*,
303. The sixth instruction asked was properly refused.
The confession was made under advice of the officer, to the
defendant, "if he said anything, to say the truth," and it
was not for the jury to "reject" the confession, even if
they found the facts as supposed. If it appeared to them

that the first confession was made on the inducement supposed, and that the influence of the inducement was removed by *any means*, then it was their duty to consider the confession voluntary. The usual motive might, in some cases, be considered sufficient, in others not ; but whether or not in any particular case, is a question of fact for the jury.

The modification of the seventh instruction, asked by the defendant is not insisted on as error, and clearly it was not.

The defendant asked the Court to instruct the jury as follows : " The absence of all evidence of motive, is a strong presumption of innocence," which instruction the Court refused, as asked, but gave the same, with this modification : " The absence of all evidence of motive, is a strong presumption of innocence, when the fact of the commission of the offense is doubtful ;" to which refusal and charge the defendant excepted. Whether the modification was right or wrong, it is unnecessary to inquire, for it would have been proper to have unqualifiedly refused the charge requested. The evidence that shows that the defendant participated in the homicide, shows the *motive* for committing the crime. There is no absence of evidence of motive, but, on the contrary, the most satisfactory evidence thereof, and the charge requested was a mere abstract proposition, inapplicable to the facts of this case. Its denial would, for these reasons, have been proper, and its modification, if erroneous, was not prejudicial to the defendant.

The defendant further asked the Court to charge the jury as follows : " The burden of proof is on the State, to prove the guilt of *this* defendant beyond a reasonable doubt, by the best evidence ; and in order to justify a verdict of guilty, the facts proved must be absolutely incompatible with the innocence of the defendant, and incapable of ex-

planation upon any other reasonable hypothesis than that of his guilt," which the Court refused as asked, but gave the same, with the modification of these words, " upon. circumstantial evidence," inserted and read after, and in connection with the words " in order to justify a verdict of guilty " as above asked; to which refusal and charge the defendant excepted.    The charge asked was erroneous, and, as modified, was sufficiently favorable to the defendant.    *Commonwealth vs. Webster,* 5 *Cush.,* 320 *Com. vs. Goodwin,* 14 *Gray,* 55 ; *Wills on Cir. Ev.,* 149, *et seq.*; *Wharton's Cr. Law, Sec.* 707, *et seq.*; 3 *Greenleaf's Ev., Sec.* 29 *and Notes.*    Though A may point his gun at B, and shoot him through some vital part, and death to appearance immediately follow, these facts would hardly show to *an absolute certainty* that the former was guilty of a homicide, for the life of the latter may possibly have been terminated by sudden disease, an instant before, or at the very instant of the discharge of the gun, but certainly they would not with *absolute certainty* show a criminal homicide. They may have been the acts of an insane man who supposed he was doing his duty, or who was not a free moral agent.    Our inability to discern the mental operations or the motives, makes it impossible for us to determine *with absolute certainty,* the character of a particular act.    Hence we have to act on a moral certainty, and the law only requires that the charge against a person accused of crime be established " beyond a reasonable doubt."    It is difficult to make the meaning of this expression more clear by any circumlocution.    " It is not mere possible doubt "—says Chief Justice Shaw—" because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt.    It is that state of the case, which, after the entire comparison and consideration of all

the evidence, leaves the mind of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.  *  *  *  The evidence must establish the truth of the fact to a reasonable and moral certainty ; a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it.   This we take to be proof beyond reasonable doubt ; because if the law, which mostly depends on considerations of a moral nature, should go further than this, and require absolute certainty, it would exclude circumstantial evidence altogether." *Com. vs. Webster*, 5 *Cush.*, 320.   See also authorities last above cited.

It is argued that the motion for a new trial should have been granted, because the evidence is insufficient to justify the verdict—that there is no evidence of premeditated design.   A most conclusive refutation of this position is found in the confession of the defendant.   He said; after stating that they had agreed to hurt nobody, "We (Edwards, Whitman and defendant,) then started for Frederick Ableitner's house.  *  *  When we got to the corner, near Ableitner's house, we sat down and talked over the matter. Whitman said Ableitner had $2,000 in gold, and said that we would take that or five dollars, or two dollars, or whatever amount we may find.   We agreed that Edwards was to call Ableitner out and knock him down.   Whitman was to hold him, and I was to stand at the door, and Edwards was to go in and get the money.   Whitman and I were to watch, and give the alarm if any one was seen to approach. Before we left the corner where we had sat, Whitman said that 'dead men tell no tales,' Edwards said that is so, ' dead men tell no tales.' I said that is so. We then started down toward the house.  *  *  Edwards cut each

of us a club ; gave me a club, and Whitman one, and took one himself. We then started for the house * * We all went up to the door. Edwards knocked at the door. Ableitner asked who was there ; Edwards said, three men from Chatfield wanted to go to St. Charles. Ableitner came out of the door. Edwards stepped behind him and followed him toward the road. I followed directly behind Edwards, and Whitman behind me. When about fifteen feet from the door, Edwards struck him with a club, knocking him down. He fell on his hands and knees, and turning around came back toward the house on his hands and knees. As he came near me, still on his hands and knees, I fired my revolver at him. Immediately after I fired Edwards fired at him." The expression " Dead men tell no tales", assented to by each, is full of murderous meaning, and sufficiently shows the premeditated design.

We are of opinion that the order appealed from be affirmed.

BERRY, J.—In this case the defendant *testified*, and his testimony was addressed both to the court and jury : to the Court upon the question of the admissibility of his confessions, and to the jury upon the question of weight to be given to the same. To such a state of facts, I think the prohibition (*found in Section* 1, *Ch.* 70, *p.* 110, *Laws* 1868) in regard to allusions to, and comments upon a defendant's neglect to testify does not apply. Upon this ground, rather than upon that taken by the Chief Justice, I prefer to rest my assent to the conclusion arrived at in the foregoing opinion in regard to the Attorney General's allusion to, and comments upon the defendant's neglect and refusal to testify in the case.

McMILLAN, J.—I concur in the views expressed by Justice Berry as to the construction of *Section* 1, *Ch.* 70 *of the Laws of* 1868, and its application to this case.