·CHASTINE COX, ·PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*.Killing while committing a felony — intent to kill, immaterial — chapter 333 of 1876 — As to alleging property stolen to belong to different parties in different counts — What counts for murder may be joined — Juror — when not incompetent by reason of opinion — Challenge to the array — need not be verified — demurrer to — when sustained — Conviction not reversed for errors in procuring the jury.*

'Under chapter 333 of 1876, making the killing of a human being, by a person engaged in the commission of any felony, murder in the first degree, the question of intent to kill is wholly immaterial, and a conviction thereunder cannot be escaped by showing that the intent of the accused was not to kill, but to defend his own life or person, or to escape arrest, or avoid pursuit.

'.The accused was indicted for the murder of a Mrs. Hull, some of the counts . charging that the killing was done while he was engaged in the felony of steal-

ing certain specified articles of her property, and some that he killed her while stealing certain property belonging to her husband. It appeared that all the articles were taken at one time, and that a portion of them had been given to Mrs. Hull, and the residue were part of her personal ornaments and presumably the property of her husband.

*Held*, that it was proper to charge in some counts that the property belonged to her, and in others that it belonged to her husband.

*Held*, further, that it was not error to set out in the indictment several common law counts for murder.

A juror, upon the trial of a challenge to the favor, testified that he had read of the case in the papers and formed a decided opinion, which it would require evidence to remove, and that he would enter the jury box with it still existing, and that it would require evidence to dislodge it; that he generally believed what he read in the papers, if it founded reasonable, until contradicted; that if accepted as a juror he did not think he would permit what he had read to affect his judgment; that he verily believed he could decide the case according to the evidence produced in court, and that alone; that his opinion was based upon the truth of what he had read; that he did not know whether the account was true or not; that there was nothing to keep the opinion in his mind when the trial had begun and evidence been introduced; that he believed the prisoner to be guilty from the statement, in a general way. The court, from the answers which the juror made, and from his appearance before it, overruled the challenge. *Held*, no error.

While the prisoner was at the station-house, and after the watch of the deceased had been found upon him, he was asked by an officer where the rest of the jewelry was, and replied that he knew nothing about it. Subsequently, the question being repeated, he asked, "Will you do me a favor." The officer said, "I will if I can; I sympathize with you, or I pity you; you are in a bad fix." The prisoner then asked him to send his clothes to his mother and not let her know what had happened. The prisoner then, in answer to a question by another person, made a detailed statement of what he had done.

*Held*, that his confession was properly admitted on the trial.

The counsel for the prisoner interposed an unverified written challenge to the array, in which he referred to each step necessary to the selecting and drawing of the jury, and alleged, substantially, that it had not been done in the manner and form required by the statute. An oral demurrer, interposed by the district attorney, was sustained by the court, in part, at least, because the challenge was unverified. On the following day, and after three jurors had been drawn and examined, but before any had been sworn, the court, of its own motion, offered to allow the prisoner's counsel to renew his special plea, leaving it unverified, and the district attorney offered to traverse it and consented to proceed at once to the trial of the issue thus joined, and to allow the jurors drawn to stand aside; the court stating that it was done so that there might be no possible prejudice to the prisoner. To this proposition the counsel for the prisoner refused to consent, and the trial proceeded.

On a writ of error to review the conviction, *held*, that this offer of the court and district attorney took away the right of the prisoner to insist that he was injured, in fact, by the action of the court, and compelled him to stand upon errors of law, *strictissimi juris*.

That the mere unaccepted proposition did not have the effect of curing any error that might have been committed in sustaining the demurrer.

That the fact that the challenge was unverified was not a ground of demurrer.

That the demurrer was, however, properly sustained, as the challenge was bad because of the alternative character of its allegations; they impliedly admitting that everything, not done in the particular mode required by the statute, might nevertheless have been done in some other way, which the law to prevent a failure of justice would accept as sufficient.

Irregularities in reference to the working of the machinery, provided by statute for procuring jurors, offer no ground for reversing a conviction, unless it appears that the defendant was in fact injured, or prejudiced thereby.

WRIT OF ERROR to the Court of General Sessions of the city and county of New York, to review the conviction of the plaintiff in error of murder in the first degree.

The murder was committed by Cox, after he had broken into the house of the deceased, in order to steal certain articles of jewelry from the room.

One of the jurors, on the trial of a challenge to the favor, testified, in substance: that he had read of the case in the papers and formed a decided opinion, which it would require evidence to remove, and that he would enter the jury box with it still existing, and that it would require evidence to dislodge it; that he generally believed what he read in the papers, if it sounded reasonable, until contradicted; that if accepted as a juror he did not think he would permit what he had read to affect his judgment; that he verily believed he could decide the case according to the evidence produced in court, and that alone; that his opinion was based upon the truth of what he had read; that he did not know whether the account was true or not; that there was nothing to keep the opinion in his mind when the trial had begun and evidence been introduced; that he believed the prisoner to be guilty from the statement in a general way.

*W. F. Howe*, for the plaintiff in error.

*D. C. Rollins*, for the defendants in error.

DAVIS, P. J.:

The plaintiff in error was indicted, tried and convicted of the crime of murder in the first degree, in the General Sessions for the city and county of New York. Section 3 of chapter 337 of

the Laws of 1855, provides that "every conviction for a capital offence, or for one punishable as a minimum punishment by imprisonment in the State prison for life, shall be brought before the Supreme Court and Court of Appeals * * * from the said court of General Sessions of the peace in and for the city and county of New York, *by a writ of error with a stay of proceedings as a matter of right;* and the said appellate court may order a new trial if it shall be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial whether any exception shall have been taken or not in the court below."

The intent of this statute was declared by the Court of Appeals in *Ferris* v. *The People* (35 N. Y., 126), in which DAVIES, Ch. J., in delivering the opinion of the court, says : "The provisions of this act make it therefore the imperative duty of this court, in a case like the present, to examine carefully the whole record, and if satisfied that the verdict is against the weight of evidence or not authorized by law, or if it shall be of opinion that justice requires a new trial, then the same shall be granted whether or not any exception shall have been taken in the court below. The whole case is, therefore, to be considered here as *res nova*, and the judgment is to be affirmed or reversed as the court shall be of opinion whether or not substantial justice has been done. The clear intent of this statute is to impose on the court a disregard of technicalities and irregularities not working any prejudice to the prisoner, and to decide the case according to justice and the very right of the matter."

This very sensible construction of the statute has not since been overthrown, and it is our duty to apply it to the case at bar. A very careful examination of all the proceedings on the trial of the plaintiff in error leads us to the strongest possible conviction that "substantial justice has been done," and that it is our duty to disregard the "technicalities and irregularities" occurring, or alleged to have occurred, in the progress of the trial, because we are convinced that they worked no prejudice to the prisoner; and to decide the case, in the language of the Court of Appeals in the case above cited, "according to justice and the very right of the matter," and not upon judicial technicalities.

The prisoner is charged, in several counts of the indictment, with killing one Jane L. De Forest Hull, while he was engaged in the felony of stealing certain specified articles of her property ; and in certain other counts with killing her while engaged in stealing certain property of her husband, Alonzo C. Hull. The indictment also contained several common-law counts for murder. The evidence clearly established, both by the prisoner's confession and by facts quite sufficient independently of the confession to have convicted him of the charge, that he burglariously entered the house of Alonzo C. Hull for the purpose of committing the crime of larceny, and while engaged in that crime, in the room where Mrs. Hull was sleeping, the noise made by him awakened her, and thereupon he committed acts of violence, for the purpose of preventing her outcries or resistance, which caused her death. The present statute, in this State, declares that the killing of a human being, unless it be manslaughter or excusable or justifiable homicide as therein provided, shall be murder in the first degree, "when perpetrated by a person engaged in the commission of any felony." Under this definition the question of intent to kill is wholly immaterial. It is enough to establish that the killing was actually perpetrated by a person engaged in the commission of a felony, by the use of some degree of force or violence ; and the question of design to kill was by the amendment of the statute by chapter 333 of the Laws of 1876 made wholly immaterial. No person therefore, who kills another, while he is engaged in committing a felony, can escape conviction of murder in the first degree by showing that his intent was not to kill. but to defend his own life or person, or to escape arrest, or avoid pursuit, or simply to maim or wound or frighten, or do any violence short of death. The law makes the killing while engaged in committing a felony, murder in the first degree independently of all question of motive.

There was no misjoinder or other error, in uniting the several counts of the indictment. It was proper to charge the larceny in which the prisoner was engaged, as of the property of the husband in some counts, and of the wife in others ; *first*, because it was matter of legal doubt as to which of them some portions of such property belonged ; and, *secondly*, because the larceny, in fact,

was a single act of taking, and it appeared that some portion of the property belonged to Mrs. Hull by gift. For instance, the watch and chain and other portions were part of her personal ornaments, and presumably the property of the husband in the absence of proof to the contrary. No possible harm to the prisoner could arise from the fact that the property is described in the several counts in the mode above stated ; and so in respect to the joinder of the common-law counts of murder. It has long been the settled law of the State that a conviction of murder under the statutes might properly be had where the indictment charges murder at common law. The change of murder into degrees does not affect that question, in our opinion, any more than the change of manslaughter into several degrees under the Revised Statutes, affected the right to convict of any degree under the commonlaw indictment of murder. The degree of homicide is matter of proof, to be established by evidence on the trial ; and where the proof justifies a conviction of homicide in any degree, the conviction may be had accordingly, whether it be for either of the degrees of murder, or either of the degrees of manslaughter.

Two jurors were challenged to the favor by the prisoner. They were each examined quite at length by the respective counsel and by the court on the question whether they had formed opinions of the guilt of the accused. The court overruled the challenges and they were sworn in as jurors. We think the challenges, as challenges for principal cause, were properly overruled under the provisions of chapter 475 of the Laws of 1872, and although that statute is not decisive upon challenges to the favor upon the ground of indifferency of the person proposed as a juror, it necessarily imparts to the question a legislative construction as to indifferency founded upon an impression or opinion in reference to the guilt or innocence of the accused. In *Thomas* v. *The People* (67 N. Y., 218), the Court of Appeals passed upon the sufficiency of a challenge in a case almost precisely analogous to that now before us, and we think that decision is not affected by the subtle distinction made by the same court in *Greenfield* v. *The People* (74 N. Y., 277, etc). In the latter case the opinion of the juror was derived in part from the reading of a portion of the testimony of a former trial of the same case, and the court seem

to have been of opinion that the source of the opinion intensified its effect to such an extent that the juror could not pass properly upon the same evidence when presented to him on a new trial, although he swore that he could do so. (And see *Pender* v. *The People*, 18 Hun, 560.)

The confessions of the prisoner were admitted in evidence under exceptions. The first confession was made at the station-house in Boston to the police officer who arrested the accused, and it was objected that it was made under such inducements or influences as should have excluded it. The watch of Mrs. Hull had been found upon the prisoner's person. The officers then asked him where the rest of Mrs. Hull's jewelry was? The prisoner replied, that he knew nothing about Mrs. Hull's jewelry; afterwards the officer repeated the question, and the prisoner said : "Will you do me a favor?" The officer replied, "I will if I can; I sympathize with you, or I pity you; you are in a bad fix." The prisoner then requested that the officer would send his clothing and things to his mother, and not let his mother know that anything bad had happened to him. No promise or threat was made, nor any inducement held out to the prisoner, except such as may be inferred from the expression, "I sympathize with you, or I pity you; you are in a bad fix." The prisoner then, in answer to a question put by the witness Balch, who asked him to tell them about the murder, went on to make a detailed statement of how he entered the house and what he did. The inquiry in such cases always is, as was said by GROVER, J., in *The People* v. *Wentz* (37 N. Y., 303, 309), "was the confession made under circumstances making it reliable for truth? and if so, it is admissible irrespective of the means by which it was obtained." (*People* v. *McMahon* (15 N. Y., 384, and cases cited.) In *The People* v. *Wentz* the prisoner had been arrested and was confined in jail when his confession was made. A police officer went into his room and told him he was in a bad box, and had got caught at last, and asked him who the others were, and then the defendant made the confession. In that case DAVIES, Ch. J., examines the authorities at length on the subject of confession, and he cites with approval the test given by Lord DENMAN, Ch. J., in *Arnold's Case* (8 Car. & Payne, 621), which is, "whether any inducement was held out

to the prisoner to confess himself *untruly* guilty." We think it manifest that nothing was said or done, by the officer or any person, to lead the prisoner to believe that his offence would be more leniently dealt with if he confessed, or that any favor would be shown to him in consequence of his so doing. In his subsequent confessions to other parties, which were objected to on the ground that they were made after the supposed inducements held out by the officer, the prisoner said that he expected to suffer the penalty of the law; and again that he expected to be hung. These statements, instead of showing that his mind had been affected with the hope of lenity in consequence of confession, tend rather to contradict the idea. We think the confessions were clearly admissible within the cases above referred to.

Various exceptions were taken to the charge and to the refusals to charge as requested. We have examined each of them carefully, and are unable to discover any error in them calling for interference with the judgment.

This brings us to what is regarded as the principal question in the case, to wit, that arising upon the challenge to the array of the first panel of jurors. This challenge was put in writing; it was orally demurred to by the district attorney, and the demurrer was sustained by the court. The challenge was not verified by oath. The decision of the court seems to have been put in part, at least, upon the absence of a verification. So far as it rested on that ground, we think it was erroneous, because the want of verification is not proper ground for a demurrer. The court might have refused possibly, if the challenge was regarded as a dilatory plea, to have received it without verification, on the objection of the district attorney. But it is not material to determine whether the challenge should or should not have been verified, because, as has already been said, the absence of verification is no ground of demurrer.

On the following day, and after three persons had been drawn and examined as jurors, but before any juror had been sworn, the court of its own motion stated to the counsel for the prisoner that it had come to the conclusion to allow him to renew his special plea or challenge to the array, leaving the same unverified, and to allow the district attorney to traverse the challenge and

proceed to the trial of the issued raised thereby. The court said :
" I do this in order that there may be no possible prejudice in
the case to the prisoner at the bar."

The district attorney then offered, in the event of the prisoner's
renewing the challenge, to traverse it and to consent to proceed at
once to the trial of the issue thus joined, and that the jurors called
but not sworn stand aside for that purpose. In short, everything
was done, both by the court and district attorney, so far as offers are
concerned, to tender to the prisoner and his counsel an opportunity
for a trial and hearing of the questions of fact and law alleged in
his challenge to the array ; but he on behalf of his client refused
to consent to the proposition. This course is supposed to have
cured any error that occurred in sustaining the demurrer to the
challenge, and in one view it certainly does so. That is to say,
it takes away the right of the prisoner to insist that he was injured
*in fact* by the mode of procedure on the part of the court, and
compels him to stand upon errors of law *strictissimi juris.* For
it is obvious that the court, in making the offer to reverse the
decision upon the demurrer, and to put the prisoner where he '
stood when the challenge was interposed, and enable the questions
presented by the challenge to be tried or heard, was animated by
a desire to protect and secure all the rights that the prisoner was
entitled to claim. It is doubtful, however, whether enough was
done to take away the right to allege error. If the court had pro-
ceeded so far as to reverse its decision upon the demurrer, and to
allow and receive a traverse, and the prisoner's counsel had refused
to proceed to trial upon that issue, the right to allege error would
have been taken out of the case ; but such an effect does not fol-
low from a mere unaccepted proposition, and hence we think
we are bound to consider the correctness of the decision made
on the demurrer. We think that in strictness of law the
ruling of the court, in sustaining the demurrer, was correct. The
challenge nowhere alleged that no lists of jurors had been made
and filed in the proper office ; and that no lists were open to the
inspection of the public or the prisoner ; and that no ballots had
been prepared and placed in the general boxes; and that no panel
of jurors had been drawn for the court and been open to the
inspection of the public or parties interested ; and that none had

been summoned and were present; but, on the contrary, it assumed, by the absence of negation that all these things had been done, but not done in strict conformity to the directions of the statute. The allegations of the challenge were bad for their alternative character, or as negative pregnants, because of the necessarily implied concession that everything alleged therein not to have been done in the particular way described, had been done, or might have been done by the proper officers in some other way, which the law, to prevent a failure of justice, would accept as sufficient. Without going further into a detailed examination of the specific allegations of the challenge, enough has been said to indicate one ground on which, we think, the demurrer was properly sustained. But we regard it as well settled, by authority, in this State, that irregularities in reference to the working of the machinery provided by statute for procuring jurors, offer no ground for reversing a conviction, unless it appears that the defendant was in fact injured or prejudiced thereby. (*Ferris* v. *The People*, 35 N. Y., 125; *Friery* v. *The People*, 2 Abb. Ct. of App., 229; *Dolan* v. *People*, 64 N. Y., 485.) Such injury or prejudice might be claimed to appear if the challenge had averred that no persons for jurors had been selected, that no list had been prepared, no ballot had been placed in the boxes, and no panel had been drawn, but that a body of men had been summoned without any of the requirements of the statute having been, in any manner, pursued. But it is not enough to allege that these various things had not been done in exact technical conformity to the language of the statute.

In the case of *Friery* v. *The People* (*supra*), the court say : " The statute respecting the selecting, drawing and summoning of jurors, was not intended, *per se*, to secure impartial jurors to litigants. The purpose and object of the statutory system was to secure a due and uniform distribution of jury duty, and to guard the great body of jurymen from the fraud or favoritism of the drawing or summoning officers. The statutes establish a mode for these ends, and are directory to those whose duty is to select, draw and summon."

" By this system, the courts are supplied with jurors to aid in the administration of the laws. If it were held that the statutes

in reference to the selecting, drawing and summoning of persons to serve as jurors were other than directory, if a failure to comply with any of the many directions therein contained were to be deemed sufficient to vitiate the whole panel, the consequence would be that the whole fabric of justice would fall to the ground. Suppose, for example, the clerk omits to give public notice of the drawing, or the drawing takes place in the absence of those officers required to attend and witness it, after there had been an adjournment and a notification by the clerk to attend on the adjournment day, are these irregularities ground for vitiating the whole panel? If so, the business of every court in the State might be impeded, if not wholly stopped.

"The officers named in the statute, charged with the duty of attending the drawing as witnesses, by a neglect of such duty, would deprive the court of jurors to aid in the administration of the laws. The system contemplates no such result, but, on the contrary, was designed and intended to promote a directly opposite purpose. The omission to properly work the statute machinery by the drawing and summoning officers, is a question between the people and those officers. The machinery may be perverted so as to injure litigants, but in such a case it is the acts of perversion that become cause for challenge, and not the mere omission to properly work the machinery, when no injury or prejudice comes to litigants." (2 Abb. Ct. of App. Dec., 230.)

We think this case, and the other decisions above cited, dispose of the question raised by the demurrer upon its merits, and that the decision, therefore, of the court below was correct.

The result of these views is, that the conviction and judgment must be affirmed; and, the date fixed for the execution of the sentence having passed, this court should proceed, under the statute, to cause a day to be fixed for its execution.

BRADY, J., concurred.

Present — DAVIS, P. J., BRADY and INGALLS, JJ.

Conviction and judgment affirmed. Record remitted to the court of General Sessions, with directions to proceed on the judgment, and fix a day for its execution.