## ALPHEUS M. MERRIFIELD *vs.* LOVELL BAKER.

In the absence of any agreement to the contrary, all property pledged as security for a debt reverts to the original owner upon the extinguishment of the debt.

If policies of insurance, issued by a mutual insurance company, have been assigned as additional collateral security for a note secured by a mortgage upon the insured property, and the property has been subsequently conveyed to the mortgagee, who in consideration thereof agreed to surrender the mortgage note, such note is thereupon extinguished; and the mortgagor may maintain an action against the mortgagee to recover money subsequently received by him for return premiums at the expiration of the policies; and it is immaterial that the policies had become void by the alienation of the insured property without the consent of the company.

CONTRACT for money had and received by the defendant from various insurance companies to the plaintiff's use.

At the trial in the superior court, before *Lord*, J., it appeared that in November 1854 the plaintiff executed to the defendant's testator two mortgages of real estate in Worcester, to secure certain promissory notes, and therein covenanted to keep the buildings upon the premises insured against fire, and to assign the policies to the mortgagee. At the same time the plaintiff assigned to the defendant's testator three policies, which he then held, and which had been issued to him by mutual insurance companies upon said buildings. These policies were all made subject to by-laws which provided that the policies should be void in case of the subsequent alienation of the insured property without the consent of the respective companies.

In 1856 the defendant's testator died, leaving the defendant his residuary legatee ; and in December of that year the plaintiff executed to the defendant a deed of quitclaim of the mortgaged real estate, referring to the mortgages, " upon the condition that said Lovell Baker shall not enforce said mortgage debts against said Merrifield or his estate, and shall save said Merrifield harmless therefrom, and all costs." At the same time the defendant executed a bond to the plaintiff, with condition to deliver up to be cancelled the notes secured by the said mortgages, within three and a half years ; and this bond, the plaintiff's deed of quitclaim to the defendant, and several promissory notes of the plaintiff, which were then held by the defendant, dated and payable at various times, were put into the hands of a third person, with a written agreement that the latter should hold them for seven months, and that if by that time proceedings in insolvency should not have been instituted by or against the plaintiff, the same should then be delivered up to him, and with certain other provisions which are not now material. No proceedings in insolvency were instituted by or against the plaintiff, and at the expiration of the seven months the various papers were delivered to the persons respectively entitled thereto by the terms of the agreement. The policies of insurance remained in the possession of the defendant until they expired, in November and December 1860, at which time the companies respectively paid to him the sums of money sought to be recovered in this action

being the balance of the sums paid to the companies by the plaintiff upon obtaining the policies, after deducting the sums assessed upon the policies for losses during the time they were in force.

The judge upon these facts directed a verdict for the defendant, which was returned accordingly; and the plaintiff alleged exceptions.

*G. F. Hoar & S. P. Twiss*, for the plaintiff, cited *Felton v. Brooks*, 4 Cush. 203; *Foster v. Equitable Ins. Co.* 2 Gray, 216; *Bowditch Ins. Co. v. Winslow*, 3 Gray, 432; *Roberts v. Traders' Ins. Co.* 17 Wend. 631.

*G. F. Verry*, for the defendant. If the transactions between the parties show a payment of the mortgage debts, they also show that the defendant was to have, in addition to the securities which he then held, a conveyance of the equity of redemption. There was no agreement for him to reassign the policies. Besides; they had become void by the alienation of the property insured without the consent of the companies. The plaintiff had thus deprived the companies of their lien upon the property, and was no longer entitled to share in their profits. He had ceased to be a member of the companies, and could not have enforced a claim against them for return premiums. How then can it be said that the defendant received these sums to the plaintiff's use?

BIGELOW, C. J. The principles on which the decision of this case depends are fully stated in *Felton v. Brooks*, 4 Cush. 203. Applying them to the facts stated in the exceptions, we are unable to see any tenable ground on which a defence to this action can be maintained.

In the first place, there can be no doubt that the mortgage debt must be regarded as having been fully paid and satisfied by the conveyance to the defendant of the absolute title to the estate which was originally conveyed and held by him only in mortgage, as security for such debt. The agreement to deliver up the notes secured by the mortgage and to indemnify and save harmless the plaintiff therefrom, and in addition thereto the surrender of other notes to a large amount, which the defendant

held against the plaintiff, and which were not included in the mortgage, in consideration of the conveyance of the right to redeem the mortgaged premises, afford strong *prima facie* proof that the estate was deemed to be of much greater value than the sum for which it was mortgaged, and that it was granted and received in payment of the debt and as a full satisfaction therefor. There being no facts stated which tend to control the effect of this proof, the unavoidable inference is, that the debt secured by the mortgage was paid.

In the next place, it must be conceded that the policies of insurance under which the present claim has arisen were originally the property of the plaintiff, and were assigned to the defendant's testator as part of the collateral security for his debt, in connection with the mortgage. It was the mortgagor's right and interest in the buildings standing on the premises conveyed in mortgage which were covered by the insurance. He was the assured. The mortgagee could claim no interest in the policies except in the right of the mortgagor, and as assignee of a chose in action. *Foster* v. *Equitable Ins. Co.* 2 Gray, 216. He did not by such assignment become the absolute beneficial owner of the policies, with a right to demand and receive the sums which might be due thereon in case of loss, and to appropriate them to his own use without any accountability to the mortgagor. He held them only as incident to the mortgage, under the stipulations of the mortgagor to keep the buildings on the premises insured, and as additional security for the payment of his debt in the event that by the casualty of fire the mortgaged estate might become depreciated in value. The effect of the assignments, construed with reference to the whole subject matter of the transaction between the parties, was to give to the mortgagee the right to receive any money which might become due thereon by reason of a loss by fire, and to hold and apply it towards the payment of the debt secured by the mortgage. This was the extent of his right under the policies. When, therefore, the mortgage debt was paid, the right of the defendant to retain the policies or to demand and receive to his own use any money from the insurers ceased. If, by virtue

of the power and authority which were vested in him by the assignments, he received any money, he held it in trust for the use and benefit of the mortgagor, to whom in equity and good conscience it belonged.

There is certainly no ground to support the suggestion that the policies were given up and surrendered to the defendant as his absolute property, at the time of the arrangement between the parties for the extinguishment of the mortgage debt. It does not appear that any stipulation concerning them was made. Not having been included within the express agreement, they must be deemed to have been left to be disposed of according to the well settled rule of law, by which the beneficial interest in all securities and property pledged as security for a debt upon its payment or extinguishment revests in the pledger or general owner.

Nor is there any force in the other suggestion urged in behalf of the defendant, that the money received by him from the insurance companies cannot be held to belong to the plaintiff, because the policies were rendered void by the alienation of the property by him without the assent of the insurers. It is true that each of the policies assigned to the defendant's testator contains a by-law, by which it is provided that if the property is conveyed by the assured without the assent of the insurers, the policies shall be void. Under this provision, we suppose it must be conceded that after the conveyance of the insured premises to the defendant, a loss by fire could not have been recovered. But it by no means follows that the defendant is not liable for the money which he has received as assignee of the contracts of insurance. It is not stipulated in the policies or the by-laws that, if a policy becomes void by any act of the assured, he thereby forfeits his right to receive any money which might be due to him in the nature of a return premium. The fundamental principle of mutual insurance is, that every member ot a company, when his policy expires and he ceases to be a member, shall receive a share of the funds of the company, after payment of losses and expenses, in proportion to the sums actually paid by him on account of his policy. This principle is recognized

and the right to receive such repayment is secured to the assured by Rev. Sts. *c.* 37, § 38. Gen. Sts. *c.* 58, § 51. The equitable considerations on which the right to receive back such portion of the premiums for insurance as may not have been required for the payment of losses and expenses depends may apply with equal force to policies which expire by some express limitation, as to those which come to an end by lapse of time. Such seems to have been the view entertained by the insurers in regard to the policies issued to the plaintiff. They did not regard the policies to be void in any such sense as to deprive him of his right to receive return premiums thereon. On the contrary, long after the alienation to the defendant they paid to him these very premiums, which he received by virtue of the policies and the assignment thereof to him.

But aside from this view, there is another answer to this ground of defence, which is more satisfactory and decisive. Assuming that the policies were void, and that the insurers had a right to treat the claims of the insured to receive back any portion of his deposit money as forfeited, it is very clear that they did not so regard it. They waived the forfeiture, and voluntarily and with a knowledge of the facts paid to the defendant the several sums which the plaintiff or the person insured by these policies would have been entitled to receive, if the policies had not been rendered void by an alienation of the premises insured. The defendant did not receive this money in his own right. It was paid to him solely by reason of the assignment of the policies. He took it as the representative and attorney of the plaintiff. As against him, he shows no title to retain it. It is therefore money, in the strictest sense, received to the use of the plaintiff. *Exceptions sustained.*