MICHAEL MURPHY, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

Upon the trial of an indictment for murder, it appeared that the deceased was killed by a shot fired through a window. G., who sat near the deceased at the time and was wounded by the same shot, after having testified upon the trial as a witness for the prosecution that he was defendant in three suits commenced against him by the prisoner, which were pending at the time of the murder, and that the deceased had accompanied him several times to attend the trial of said actions, was permitted to testify under a general objection as to what the actions were brought for. *Held,* no error; that the evidence was proper as showing a motive for the commission of the crime, and that the strength of the motive might depend upon the nature of the controversy and the extent of the pecuniary interests involved; also, that in the absence of a specific objection to the form of the proof, *i. e.,* that the fact could not be proved by parol evidence, it was to be assumed that the question intended to be raised by the objection was as to the competency of proof of the fact, not to the mode of proving it.

While a substantial error in the admission of testimony in a capital case may not be overlooked because the objection was not technically correct, a mere formal objection, to be available on error, must be specifically made.

The imprint of a footstep was found on the night of the murder on a flower bed near and under the window through which the shot was fired. A witness, who had made certain measurements, was asked to state what they were. He commenced his answer by stating: "I measured from the outside of the flower bed where the man stood;" and then upon objection being made, said: "From where the footprints were up to the window," etc. The prisoner's counsel moved to strike out the answer on the ground that there was no proof that the witness knew where the man stood. The motion was denied. *Held*, no error; as if the forepart of the answer was objectionable, it was immediately corrected.

The witness testified that he had a man sit in a chair and measured from the floor to the top of his head, but the measurement was not given. *Held*, that a denial of a motion to strike out such testimony was not error, as the fact testified to was of no possible consequence.

After the prisoner's arrest and commitment to jail, he was brought into the sheriff's office, and made certain statements, to which a witness was permitted to testify under objection. By the testimony previously given, it appeared that the prisoner was asked by the officer making the arrest if he desired to make any statements as to his whereabouts on the day of the murder, and informed that if he desired to do so, the officer would reduce it to writing. The witness replied he did, and then made the statement testified to. *Held*, that the statement, according to the evidence as it then stood, was voluntary; and the reception of proof thereof no error; and that the admissibility of the evidence was to be determined by the facts appearing when it was offered.

A statement made by a prisoner is not involuntary because made after his arrest and while in custody of the officer arresting him.

After the murder, on the same evening, a mask was found under the window. During the conversation with the prisoner in the sheriff's office he was asked, "where did that mask come from?" He answered, "the children got that from the ragamuffins;" and then added, as if recollecting himself (as the witness stated), "that mask had a black nose and was torn down the face." The fact that a mask had been found had not been communicated to the prisoner. The prisoner's counsel moved to strike out this testimony, which motion was denied. *Held*, no error; that the evidence was proper as tending to connect the prisoner with the mask found.

(Argued December 20, 1875; decided January 18, 1876.)

ERROR to the General Term of the Supreme Court in the second judicial department, affirming a judgment of the Court of Oyer and Terminer in and for the county of Rockland, entered upon a verdict convicting the plaintiff in error of the

crime of murder in the first degree.   (Reported below, 4 Hun, 102.)

The facts appear sufficiently in the opinion.

*Henry Daily, Jr.,* and *James Emmett,* for the plaintiff in error.   Parol evidence of the contents of the written complaint in the three suits against the prisoner was improperly received.   (Greenl. on Ev., § 88, 82 ; *Passon* v. *Brown,* 11 J. R., 166 ; *Grimm* v. *Hammell,* 2 Hilt., 434 ; *Rex* v. *Doran,* 1 Esp., 127 ; *Rex* v. *Gibson,* R. & R. Cr. Cas., 138, 139 ; Monthly Law Mag., 71–76 ; 23 L. Obs., 20 ; *Hart* v. *Yunt,* 1 Watts, 253 ; *Sebreer* v. *Dorn,* 9 Wheat., 558 ; *Berrian* v. *Sanford,* 4 N. Y. S. C. R., 688.)   The admission of evidence as to the statement made by the prisoner was error.   (*People* v. *McMahon,* 15 N. Y., 384.)   The prosecution was bound to present evidence so convincing as to exclude the possibility that another had committed the crime.   (*F. and M. Bk.* v. *Winfield,* 24 Wend., 426 ; *Myers* v. *Malcolm,* 6 Hill, 296 ; *Dresser* v. *Ainsworth,* 9 Barb., 619 ; *Anthoine* v. *Coit,* 2 Hall, 40.)

*Seth B. Cole,* district attorney, for the defendants in error.

ANDREWS, J.   The plaintiff in error was convicted at the Court of Oyer and Terminer, held in Rockland county, in October, 1874, of the murder of one Matilda Hugus.   The murder was committed on the evening of April 19, 1874, by means of a gun or pistol shot, fired, as the evidence tended to show, by some person standing outside of a house in the town of Clarkstown, in Rockland county, in which the deceased and one Robert J. Gamble, a brother-in-law of the prisoner resided, and near a window of a room in which they were sitting when the shot was fired.   The contents of the gun or pistol passed through a pane of glass in the direction of the deceased and Gamble.   Two of the shot with which the weapon was loaded penetrated the brain of the deceased, and caused her death in a short time thereafter, and several

lodged in and about the face and head of Gamble, causing severe hemorrhage, but no permanent injury. The room was not large. The deceased sat nearest the window, and in the wall opposite the window, and in a line with the places occupied by the deceased and Gamble, shot were found, and also the mark of a slug which passed through the plastering and fell between the studs of the partition wall. There was a servant girl sitting at the time in another part of the room, who was uninjured. The murder was committed about eight o'clock on Sunday evening. The prisoner resided in Jersey City, about thirty miles distant. He was arrested with his brother, Thomas Murphy, at Jersey City, on the next day, and on Tuesday morning was taken to the city of New York by one Pinkerton, a detective, and was there rearrested on a warrant issued by a magistrate of Rockland county, and taken by Pinkerton to that county and lodged in jail. The same evening he was brought into the sheriff's office, which was in the same building with the jail, and in presence of Pinkerton and several other persons made a statement, which Pinkerton reduced to writing, but which was not signed by the prisoner, giving an account of the places where he was, what he did, and the persons he saw on the day of the murder. There were several exceptions taken on the trial to the admission of evidence, which are relied upon for a reversal of the conviction. No exception was taken to the charge.

The exceptions will be noticed in the order in which they are presented by the prisoner's counsel.

Gamble was produced as a witness for the people, and testified, among other things, that he was the defendant in three suits commenced in 1868, brought by the Murphys against him, and others, which were then pending, and that he had been several times to attend the trial of them, and that Mrs. Hugus, the deceased, had accompanied him, and that he knew what the suits were for. The district attorney then proceeded : " Tell the jury what they were for." The prisoner's counsel objected to the question, and the court overruled the objection and allowed the witness to answer. The witness then

stated that the suits were brought to set aside deeds from his wife, the sister of the plaintiff, to him. The wife of the witness was then dead, and it appeared that the suits were set down for trial on the Monday after the murder. It was clearly competent for the people to show that a litigation was pending between the prisoner and Gamble, and also the nature of the litigation, as bearing upon the existence of a motive on the part of the prisoner to commit the murder.

The case made against the prisoner rested upon circumstantial evidence, and it was an important element in the case to show that circumstances existed which might operate upon him as a motive for the commission of the crime. It was left uncertain whether the design of the guilty party was to kill the deceased or Gamble. Both were in a position to be reached by the discharge of the gun or pistol, although it proved fatal only to Mrs. Hugus. It is always competent on a trial of this character to show the relations between the prisoner and the person against whom the murderous act was directed. The jury may have believed that it was committed in this case either from resentment against Gamble, or for the purpose of preventing the deceased from appearing as a witness in the pending litigation. The strength of the motive might depend upon the nature of the controversy and the extent of the pecuniary interests involved in it, and it_was, for this reason, proper to show the character as well as the existence of the litigation. The jury were entitled to the fact proved to aid them in determining whether the prisoner had any motive for the commission of the crime, and it was for them to determine what weight should be given to it in the final determination of the case. The only objection which could be taken to the proof was to the form, and not to the substance, and it is now claimed that parol evidence could not be given of the object of the suits, and that the pleadings were the best evidence of the issues in the actions, and should have been produced. But no objection of this kind was taken. The objection was general, and no ground of objection was specified. If objection had been taken to the mode of proving

the facts, other proof might have been given, and the objection have been obviated. In the absence of an objection of this kind, it must be assumed that the question intended to be raised by the objection made was as to the competency of proof of the fact to which the question related; and not to the mode of proving it.

We should be disinclined to overlook a substantial error in the admission of testimony in a capital case, although the objection was not technically correct, but it can hardly be supposed that if the fact sworn to was untrue, or the real fact as to the character of the litigation, if disclosed, would have been more favorable to the prisoner, it would not have been shown by the defendant. The authorities on the general proposition that the objection now taken should have been specifically made on the trial, in order to be available on error, are decisive. (*Willard* v. *Warren*, 17 Wend., 257; *Cowperthwaite* v. *Sheffield*, 3 N. Y., 243; *Mabbett* v. *White*, 12 id., 442; *Walsh* v. *Washington Ins. Co.*, 32 id., 440; *Atkins* v. *Elwell*, 45 id., 753; *Height* v. *The People*, 50 id., 392.)

The witness Pinkerton testified that he had examined the premises where the deceased was killed, on the morning of the day when he was sworn as a witness, and made certain measurements. The imprint of a footstep was found on the night of the murder on a flower bed near and under the window through which the shot was fired, and evidence was given that it corresponded in size with a boot found in the prisoner's house on the following day. The witness, in reply to a question as to what the measurements taken by him were, commenced his answer by stating: "I measured from the outside of the flower bed where the man stood," and then an objection being made said, "from where the footprints were up to the window, where the shot went in, was five feet three and a-half inches, inside two feet eleven inches. I had a man sit in a chair, and measured from the floor to the top of his head." The prisoner's counsel then made a motion that the first part of the answer be stricken out, on the ground that

there was no proof that the witness knew where the man stood, and that the last sentence be stricken out on the ground that the testimony was irrelevant. The motion was denied, and the prisoner's counsel excepted. The exception was not well taken.

The part of the answer which assumed that the man by whom the footprint was made stood at that place, if objectionable, was at once corrected by the witness on objection being made by his changing the form of the answer, and giving the measurement from the place where the footprints were, without reference to the fact whether the person by whom they were made stood at that point. The measurement made, with reference to a man sitting in a chair placed where the deceased or Gamble was supposed to have been, was not given by the witness, and the fact that he made such a measurement, which was the only fact to which he testified, was of no possible consequence. The measurement of two feet and eleven inches, as is evident from the testimony of the witness Kreuder, who assisted in making it, was the distance from the floor to the window, and had no reference to the measurement in question. The judge was, under these circumstances, justified in denying the prisoner's motion.

A witness, who was present at the conversation between the prisoner and Pinkerton in the sheriff's office after the arrest, was allowed, under objection taken by the prisoner's counsel, to state the conversation. It is claimed that the statement there made by the prisoner could not be given in evidence.

The general rule applicable as well in criminal as civil cases is, that the declarations of a party, in respect to the subject-matter under investigation, whenever made, are admissible in evidence against him. If, however, it appears that the declarations made by a person charged with crime were not voluntary in the legal meaning of that term, they are incompetent and cannot be admitted. The circumstances under which the declarations in question were made, were shown by the prosecution before they were offered in evidence. These circumstances, as narrated by the witnesses for the

people, were, in some respects, controverted by the testimony of the prisoner when he was subsequently sworn, but the admissibility of the evidence of the declarations, is to be determined by the facts appearing when it was offered. It then appeared that the prisoner, when brought to the sheriff's office, was asked by Pinkerton if he desired to make any statement of his "whereabouts on Sunday and Saturday," and was informed by Pinkerton that if he desired to do so, he would reduce the statement to writing for him, and the prisoner replied that he did, and he then proceeded, without any request being made at any time that he should do so, to make the narration which was given in evidence. Upon this proof there is no ground for the suggestion that the statement was not voluntary. It was not made under the influence of threats or promises, or upon his examination on a judicial investigation touching the cause of the death of Mrs. Hugus, or the prisoner's connection with it. No authority has been referred to which holds that a statement made under these circumstances is inadmissible. The prisoner was at the time under arrest upon the charge of having committed the murder, and the statement was made to the officer in whose actual custody he had been up to the time that he was brought to the jail. But a statement made by a prisoner is not involuntary because made after his arrest, to the officer who arrested him, and although made while in his actual custody. (*People* v. *Rogers*, 18 N. Y., 9; *People* v. *Wentz*, 37 N. Y., 303.) The rule in respect to the admissibility of confessions or declarations made by a prisoner, and under what circumstances they will be excluded as involuntary, was considered by this court in the cases of *Hendrickson* v. *The People* (10 N. Y., 13); *The People* v. *McMahon* (15 id., 384); and *Teachout* v. *People* (41 id., 9). It is sufficient to say that they do not sustain the objection which is here made, or conflict with the decisions in *The People* v. *Rogers* and *The People* v. *Wentz*. The principle that proof of confessions is to be carefully scrutinized, is to be applied by the jury, and they are to

determine the weight to be given them, taking into consideration the circumstances under which they were made. We are of opinion that the statement made by the prisoner to Pinkerton was properly admitted.

After the murder, and on the same evening, a mask was found under the window where the shot was fired. During the conversation of the prisoner with Pinkerton, before alluded to, the prisoner was asked by one Schute "where did that mask come from?" He answered, "the children got that from the ragamuffins," and immediately added, as if recollecting himself (so the witness stated), "that mask had a black nose, and was torn down the face." The prisoner's counsel then moved that the testimony as to the mask be stricken out "as not having been connected with the prisoner," and the motion was denied. The fact that a mask had been found had not been communicated to the prisoner when the conversation occurred. His reply to the question of Schute indicated that he had knowledge that a mask was in some way connected with the transaction. This conversation was proper to be shown as tending to connect the prisoner with the mask found on the night of the murder.

· We have noticed all the exceptions urged upon our attention by the counsel for the prisoner, and we find no error of law in the rulings upon the trial.

The judgment should therefore be affirmed.

All concur.

Judgment affirmed.