## CHARLES H. WARD v. EMILY L. WARD.

*Claim against Estate—Decedent's Statements—Act 155 of 1875.*

A pledge ceases to be operative when its object is effected, and the whole beneficial interest in the security pledged then becomes absolute in the equitable owner.

The presumption is, in the absence of later evidence, that one intended what his solemn deed naturally imports.

One's conduct, admissions and declarations in his own interest are no more privileged as evidence for his estate after his death than for himself while living; and if the adverse party had not been present or in any way consenting thereto, are inadmissible in defense to a suit by him against the estate.

The rule excluding testimony of facts equally within the knowledge of a deceased opponent does not apply where the transaction was between the surviving party on one side and a surviving agent of decedent on the other, and in the presence of other persons but not of the decedent.

In a suit against an estate to recover the value of a mortgage which the decedent, by mistake or otherwise, had appropriated and sold without the owner's consent or ratification, testimony is admissible to show the difference between the amount called for by the mortgage and the sum which the

decedent had received for it. The claimant's right is not limited by the sum asked by another for his property.

An exception will not be considered where its ground was not stated nor made reasonably apparent.

Error to Wayne. Submitted June 20. Decided Oct. 2.

ASSUMPSIT; framed issue. The facts are in the opinion.

*C. I. Walker* for plaintiff in error.

*Griffin & Dickinson* for .defendant in error.

GRAVES, J. The plaintiff in error is a son and the defendant in error a sister of the late Eber B. Ward, and the present controversy relates to a claim preferred by Miss Ward against her brother's estate and which her nephew contests. The claim was originally heard before the commissioners appointed to adjudicate on such matters pursuant to the statute, and was allowed against the estate February 3d, 1876, at $31,798.88. The plaintiff in error took an appeal to the circuit court where an issue was framed and tried before a jury, and a verdict given and judgment entered for the claimant against the estate for $34,964.75.

The appellant has now brought error, and he states numerous objections. An outline of the chief transactions is needed to make the points intelligible, and it may be drawn mainly from the .brief of the learned counsel for the plaintiff in error.

June 1st, 1869, Henry N. Walker made his mortgage and accompanying promissory notes to the decedent Eber B. Ward to secure the payment of $22,500 and interest at seven per cent. The debt was cut up, into annual payments, one of which was to be made on the 15th day of October in each year from 1870 to 1878.

The interest was calculated and expressed as principal. But it was agreed that the mortgagor should be at liberty to pay sooner than the times fixed for payment and that in case of such prepayment there should be a corresponding abatement of interest. July 1st, 1869, $312 was paid to decedent.

On the 25th of September next thereafter Mr. Ward executed and acknowledged an assignment of the mortgage to his sister, the claimant, for an expressed consideration of $20,000. The assignment was placed on record on the day of its date. The notes were also duly endorsed over. On the 15th of October, 1869, or some twenty days only after the date of the assignment to Miss Ward, the mortgagor Mr. Walker made a payment of $625. He called at decedent's office for that purpose and then and there found that the securities had been transferred to Miss Ward and that Mr. Bean, a book-keeper of decedent in the office, held a power of attorney from Miss Ward to receive the money and was acting as her attorney. Mr. Bean received the money and receipted it in the name of Miss Ward. He produced the mortgage from decedent's safe. After several payments were thus made and received, Bean left and Mr. Lillibridge, another book-keeper in the employment of decedent, received payments but as money belonging to Miss Ward and not to decedent.

December 23d, 1873, the decedent loaned $10,000 of the Detroit Savings Bank and made his note to the bank therefor. At the same time he assigned the Walker mortgage to the bank. The assignment expressed a consideration of $10,000. It was acknowledged on the 24th of December, 1873, and recorded the same day. This assignment was by way of security for the loan and nothing more, and it is shown that in making it the decedent overlooked the previous assignment to his sister, the claimant.

April 16, 1874, the decedent sent his agent, Mr. Lillibridge, to claimant to obtain her assignment to the bank, and she complied with the request. The assignment was duly executed and acknowledged, and was recorded April 16, 1874. It recited a consideration of $10,000. But in fact she received no consideration whatever.

When Mr. Lillibridge called upon her as directed by decedent she was averse to making the assignment. He then explained to her that her brother had borrowed money of the bank, and having forgotten his transfer to her, had pledged the papers to the bank by way of security for the

loan; that having thus pledged the papers as his own after he had assigned them to her, he felt embarrassed and desired she would relieve him from his predicament by executing the assignment to the bank; that thereupon and out of regard for her brother and in order to extricate him and make good his assignment as collateral security she at length consented. On obtaining her assignment Mr. Lillibridge at once reported to decedent what had taken place.

In due season thereafter decedent paid up the loan to the bank and cancelled the condition under which the mortgage had been turned to special use as collateral security. The object of the pledge being performed, the pledge ceased to be operative and the whole beneficial interest became absolute in the true owner of the equity of redemption.

At this time, June 17, 1874, the Savings Bank executed an assignment of the securities to the decedent and in the ensuing September he conveyed them absolutely to the bank for $9,501.85, being $738.19 less than the true amount. This last sum was discount.

Excluding $312 paid before the assignment to claimant and the further sum of $625 which went to her credit, the decedent actually received upon the papers and appropriated $34,226.56, and if he had not submitted to the discount he would have received $34,964.75, the sum awarded by the jury.

The brief represents that defense has been made on the theory that the assignment from decedent to his sister was without consideration and a purely voluntary and barren act and that their mutual dealings in relation to the mortgage were gratuitous and unreal and not meant or expected to constitute any ground of claim by one against the other.

First. The first point noticed is the charge that the court erred in excluding evidence of what decedent said in favor of his ownership on the occasion of his assuming to sell the securities to the bank.

The claimant was not then present, and there is no room for saying she was privy to her brother's statements or that she has at any time assented.

It is now contended that the claims he then made of ownership were competent evidence for the estate before the jury and against the claimant, that he was in fact owner.

That the real bearing of questions may not be lost sight of and rational distinctions be obscured, it is material to keep in mind that this contention is between the claimant and the estate of Eber B. Ward, and that the circumstance that the case happens to be entitled as one between the claimant and Charles H. Ward is of no importance. Her right and the principles governing the defense are just the same as they would be if Eber B. Ward were living and the controversy was going on between them.

His conduct and admissions must affect his estate as they would have affected him in that case (*Swayze v. Swayze*, 1 Stockton, 273, 282, 284), and his representations and declarations made in his own interest or on his own behalf, are in no manner more privileged or influential for his estate than they would have been for him.

The case affords no warrant whatever for any serious claim that the transactions between the decedent and his sister in relation to the ownership of the securities were mere acting and trifling and without designed meaning or natural operation. The express facts and all presumptions are repugnant to such an idea. The proceedings of decedent in transferring to his sister and in procuring her sanction to his pledge to the bank must be considered as intended to be efficacious according to their natural import, and the case shows nothing of later date of competence in law to cause any different condition. Whatever liability the mortgagor may have incurred to the claimant is of no moment now, and whatever rights third parties might have been able to acquire or may have acquired against the claimant by dealing with decedent on the faith of his being owner of the papers, it is very clear he could not create any right in himself against her by claims and shifts she neither knew of nor authorized or assented to.

The ruling of the court was correct; decedent's declarations were no more evidence for the defense here than they would have been for him in case he had lived and been

the contestant, and surely he could not have proved his own mere declarations to third parties of his ownership in order to establish his title against the claimant. *Wilson v. Wilson,* 6 Mich., 9; *Jones v. Tyler,* Id., 364; *Van Vleet v. Blackwood,* 33 Mich., 334; *Baxter v. Knowles,* 12 Allen, 114; *Downs v. N. Y. Cen. R. R. Co.,* 47 N. Y., 83; *Marcy v. Barnes,* 16 Gray, 161; *Osgood v. Coates,* 1 Allen, 77; *Plumer v. French,* 2 Foster, 450; *Isles v. Tucker,* 5 Duer, 393; 1 Cow. & H. Notes, 157; *Glynn v. The Bank of England,* 2 Ves. Sen., 39, 43; *Rex v. Debenham,* 2 B. & Ald., 187; *Outram v. Morewood,* 5 T. R., 121.

The refusal to admit decedent's first assignment to the bank when offered for the same purpose, is sustained on the same ground. As his representation to the bank that he was owner, it was not evidence in his favor or in favor of his estate against the claimant that in fact he was such owner. Besides, a few months later he admitted he was not owner when he assigned to the bank. He did so when he procured her assignment to make his good.

Second, The claimant being on the stand, her counsel asked her, "What, if any thing, did you receive for the assignment of the H. N. Walker mortgage to the Detroit Savings Bank?" The question was objected to as "incompetent, irrelevant and immaterial." The court overruled the objection, and an exception was taken. The claimant then replied: "Nothing; I did not receive anything; I did not receive a cent."

It is urged here on the part of the estate that the inquiry was not confined to the specific interview between the claimant and Lillibridge when he obtained the assignment, and when decedent was not present and others were, but was general and applied to the whole space of time before and after that interview and reached far enough to call out a statement from her of a fact equally within decedent's knowledge; and this, it is said, was contrary to the statute. Sess. L. 1875, p. 184.

We observe in the first place that we cannot concur in the construction thus given to the record.

The questions immediately preceding the one objected to, and connected with it pretty plainly indicate that the latter did refer to the occasion when the assignment was obtained and was not indefinite in relation to time, and the last answers she made next before the question complained of, imply that she was under the impression that the examination related to that occasion. Her attention was distinctly drawn to it and she had just deposed that her brother was not present, but that Mr. Lillibridge, Mr. Mayhew and perhaps some other members of the family were present. The fair construction of the record is, that she was asked and so understood, about having received any thing at that time. Granting that the other view of the record would maintain error, still the court would not be inclined to favor it if only equally probable with the construction adopted. Assuming that the question applied to the occasion when decedent was not present and Lillibridge and Mayhew were, it then follows that the statute could not apply.

It may be further observed that the objection might be disposed of under a well settled rule of practice. The ground of the exception was not stated at all, and considering the circumstances, the point now urged was not so obvious as to probably occur to the judge's mind on the tender of a general objection. The plaintiff in error is therefore not entitled to insist on the ground here taken. *Morissey v. The People*, 11 Mich., 327, 332; *Hollister v. Brown*, 19 Mich., 163; *Gilbert v. Kennedy*, 22 Mich., 117; *Campbell v. The People*, 34 Mich., 351; *Lobdell v. Bank*, 33 Id., 408; *Elwood v. Deifendorf*, 5 Barb., 398, 405, 406; *Jackson v. Hobby*, 20 Johns., 357; *Murphy v. The People*, 63 N. Y., 590; *Nash v. Hunt*, 116 Mass., 237; *Burton v. Driggs*, 20 Wall., 125; *Bain v. Whitehaven & Furness Junction R. W. Co.*, 3 H. L. Cases, 1, 15, 16.

Third. The witness Lillibridge had sworn that he was in decedent's service and went to the claimant to get her to assign to the bank. He had likewise testified as to what he had informed her the occasion was which made her assignment to the bank desirable and as to what occurred

at the time. He was then asked, "under whose instruction he was acting in going to the claimant and transacting this business?" It was objected on the part of the estate that instructions to the witness to do what he did could not be proved in that general way. The court overruled the objection and the witness answered, "Captain E. B. Ward."

It will be observed that the objection was not that the question was leading, but that it was too general. The force of the point is not perceived. If explanations were deemed of any importance, cross-examination might have secured them.

The conversation at the time the claimant assigned to the bank between her and decedent's agent Lillibridge, as to the occasion for making the assignment, was admissible.

It was no more objectionable than if it had occurred between the claimant and decedent himself instead of between the claimant and decedent's agent.

It concerned the act of transfer which was then arranged and completed and on which the estate founds its defense, at least mainly, to the demand of the claimant. *Cliquot's Champagne*, 3 Wall., 114; *Fairlie v. Hastings*, 10 Ves. Jr., 123, and Sumner's notes; 1 Greenl'f Ev., §§ 113, 114, and notes.

Fourth. The witness Mumford was allowed to state the difference between the sum received by decedent from the bank at the time he assumed to sell the securities, and the amount the mortgage then called for, the claimant insisting upon her right to recover the latter.

It is contended for the estate that this was improper, and the position is taken that decedent was not, nor is his estate liable for any more than he chose to exact or obtain from the bank as the purchase price. The court think differently. For the purpose of the point the securities are to be taken to have been the property of the claimant and to have been appropriated by decedent without any arrangement by her to accept from him whatever he might obtain and suffer any sacrifice his necessities might dictate to himself. There is no pretense they were not good for the

amount claimed, and there would be no justice in compelling the claimant to accept what the decedent chose to be satisfied with. It did not lay with him to measure her rights by his necessities.

Fifth. All the propositions charged and all the refusals to charge were excepted to. We discover nothing in these rulings which would justify discussion. The instructions given were fair and suited to the requirements of the case, and those refused were objectionable in themselves. Moreover the case needed no further instructions.

The judgment should be affirmed with costs.

The other Justices concurred.