Bissell, P. J.,
delivered the opinion of the court.
This matter has been in litigation ever since Brasher’s failure, in 1886. The present suit was tried once before, and from the judgment in that case the trustee, Marsh, prosecuted an appeal to the supreme court, which is reported in the 16 Colo. 331. An analogous transaction gave rise to another suit, which was brought to this court, and is found in the 2 Colo. App. 324. These two decisions seem to be very much relied on by the counsel for the appellee in his argument. As we read those two cases, neither of them touch upon or decide what in the present opinion is made the pivotal question. The decision of the supreme court in the 16 Colo., supra, turns almost exclusively upon a consideration of the question of fraud in the failure, coupled with the knowledge of the creditors concerning the nature and character of the transaction. The judgment in that case was reversed for the errors which the court committed in instructing the jury concerning sundry sales of the goods pledged, which had been made by Brasher, and respecting what was alleged to be the' *307 fraudulent character of the entire transaction. The court very properly held the jury were entitled to be informed concerning the law which would be applicable in cases of that description, and the failure of the court to instruct them on these subjects necessitated a new trial of the case. There is nothing, however, in the statement of facts preceding the opinion, and nothing in the opinion itself, respecting the question which has been foreshadowed by the statement ini this, and the opinion does not help us in this particular. It is conceded the present appellant attempts to question the character of the transaction. We do not, however, find enough in this record to call for any expression on this subject. Those two decisions will serve to guide the judge who may ultimately retry the ease. To entitle an appellant to insist that the court shall pass on such questions, it is essential that the record disclose all the testimony on the subject,' and, if it be excluded, the offer of proof must be sufficiently; broad to indicate the extent to which the testimony would have gone if the court had ruled with him. In our judgment the present record does not rise to this level, and we are therefore relieved from the labor of stating what the law might be upon some case not disclosed. The case in the 2 Colo. App. practically turns on the same question, and the discussion of the court is limited to the same subject-matter. It is true the learned judge writing the opinion states in a general way the law concerning warehouse receipts, and the rights of pledgor and pledgee in cases of transfer; but even a casual examination of the opinion will disclose the fact that the nature of the transfer in the present case and the title which the pledgee took and the measure of his damages when he brought an action for the conversion of the goods, was not in the contemplation of the court when the case was decided:
Enough has been stated to show that in a resolution of the present inquiry these two antecedent decisions give us no aid. The character of the instrument which formed the basis of the present suit was fully recognized by the pleader in draft1 ing his complaint. It is therein designated as a pledge, and *308 the pleader generally alleges its execution and transfer to Marsh, as trustee, as security for the payment of the debts of the cestuis que trust, the nonpayment of the indebtedness, the conversion of the goods, and the consequent damage. The true nature and character of a pledge has been long established, and aside from any special limitations or conditions contained in the contract, the rights and the title of the pledgee are almost universally agreed upon by all text writers and in all precedents. The present litigation does not call for any statement of the differences between a mortgage and a sale and a pledge, but it is enough to recognize the declared law to be that the pledgee is never treated as an absolute owner, but as one having a special title and a special property, which may, with sufficient accuracy for the present determination, be stated to be limited to what is necessary to accomplish the purposes for which the property was put in pledge. Jones on Pledges, secs. 4 and 11, et seq.; Cortelyou v. Lansing, 2 Caines Cas., 200; Robertson v. Wilcox, 36 Conn. 426.
Whenever there is an interference with the property, the pledgee may have an action against the trespasser to recover his damages. It is unnecessary to determine whether this is true in all cases where the title of the possessor is limited, because it is universally acknowledged that a pledgee may maintain suit to recover for any injury which destroys the value of his contract, or deprives him of his possession and title. Since this is true, it becomes very important to inquire what damages the pledgee may recover when his possession is disturbed and the property taken away from him, under circumstances like those which surround the present transaction. The goods were in the pledgee’s possession under a transfer which was sufficient in the law to vest him with a special title and with the right of possession until the purposes of the pledge had been accomplished. When the sheriff took the goods he rendered himself liable to suit at the instance of the pledgee, and must respond in some way and to some extent for the damage which he has occasioned. All *309 the cases recognize a very wide distinction between the responsibility incurred by a stranger and that which attaches to the owner, or one in privity with or claiming under him.
Wherever an action in trover is brought by the pledgee against one who is a mere wrongdoer, he is always entitled to recover what he can show to be the value of the goods pledged, regardless of his special interest in the property. The rule seems to be based upon the consideration that this result avoids all circuity of action, subjects the wrongdoer to but a single suit for his trespass, and leaves the pledgee to answer over to the pledgor for any surplus which may come into his hands as the result either of a suit or of a sale. But when the property is seized by the owner, or by aiy one who claims in his right, the pledgee may then only recover the value of his interest in the goods. Davidson v. Gunsolly, 1 Mich. 388 ; Warner v. Matthews, 18 Ill. 83; Russell v. Butterfield, 21 Wend. 300; Seaman v. Luce, 23 Barb. 240; Burk v. Webb, 32 Mich. 173; Levan v. Wilten, 135 Pa. St. 61; Sheldon v. Southern Ex. Co., 48 Ga. 625; Chamberlin v. Shaw, 18 Pick. 278.
It follows that if the conversion had been the act of Brasher, and this suit had been between Marsh and Brasher, Marsh could only have recovered thé value of his interest as pledgee, as it existed at the time he brought the suit in March, 1887. The testimony which the plaintiff produced to show the extent of the indebtedness when the pledge was made; and the extent of his collections, would have determined his right of recovery. Had it appeared on the trial that the creditors had received from the pledgor other sums than those which had been turned over by the pledgee, all such payments would have been proper subjects of consideration for the jury to determine the extent of their special interest in the property. It Avould have been equally competent in such a suit for Brasher to show that the object of the pledge had been otherwise accomplished, if his proof established a satisfaction of the claims. Such evidence would limit the trustee’s right of recovery. Compton v. Jones et al., 65 Ind. 117; Merrifield v. *310 Baker, 91 Mass. 29; Ward v. Ward, 37 Mich. 253; Overlock v. Hills, 8 Me. 383.
• It only remains to determine whether Cramer, as a sheriff, in the execution of his process, is a wrongdoer and a trespasser, against whom the pledgee has a right of action for the total value of the goods, or whether he stands in such relations to the pledgor that Marsh’s right of recovery must of necessity be limited to his special interest. Under our statutes regulating attachments and providing for their execution upon personal property, it is generally enacted that property capable of manual delivery is the subject of attachment, but the writ may only be executed by taking it into custody. There is no provision in our act otherwise providing for effectuating the process by the service of notice on some person who claims a special title to it, and securing the enforcement of the lien at the same time that the rights of the attaching creditor are protected. It would, of course, be true that the sheriff who takes property which has been pledged takes .it subject to the rights of the pledgee, and may, if the pledgee has unsatisfied claims, be sued either in replevin or in trover. In the latter case judgment must go against him to the extent of the injury which he has occasioned. There is no practical trouble in cases of this description, since the attaching creditor will always be called upon by the officer to protect him. There seems, however, to be no other way by which the creditor can avail himself of whatever interest may be left to the owner in the property pledged'. Under these circumstances it would be a very great hardship and a wrong to hold that the sheriff, by his levy, became a wrongdoer, and therefore liable to the pledgee for the total value of the property seized, regardless of the extent of the latter’s interest. In a similar case, but whether under a similar statute does not appear, the Illinois court held the sheriff was not a wrongdoer, but stood in precisely the same position with reference to his seizure the owner would, had he been guilty of the same act. Baldwin et al. v. Bradley, 69 Ill. 32. This discussion demonstrates the error into which .the court *311 below fell in instructing the jury as to the measure of' damages. So long as there was evidence in the case which tended to show that the object of the pledge had been wholly or partially accomplished, and the debt secured by the transfer of the receipts had been totally or partially discharged, the jury should have been called on to determine the amount of the original debt, the extent of the payment, and the consequent remaining interest of the pledgee.
There are no other points presented by the record or stated in the argument which call for any discussion or any opinion. . For the error which the court committed in failing to instruct the jury concerning the proper measure of damages, this case must be reversed and remanded.

Reversed.