### HARRIS v. HIRSCH et al.

(Supreme Court, Appellate Division, First Department.   November 15, 1907.)

1. MORTGAGES—DEED AS MORTGAGE—SUFFICIENCY OF EVIDENCE.

Evidence in an action to have a deed absolute in form declared a mortgage, that for plaintiff consisting of the recollections of witnesses as to conversations and admissions occurring many years before any question was raised as to the title, *held* not to require disturbance, as against the weight of evidence, of the decision of the trial court that the evidence was insufficient to warrant a finding for plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 95–113.]

2. SAME—EVIDENCE.

The fact that the grantee in a deed intended to give the grantor any profit that was realized on a final sale of the property would not justify a finding that the deed was given merely as security for a loan.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 95–113.]

3. SAME—SUFFICIENCY OF CONSIDERATION—EVIDENCE.

The opinion of a real estate expert that land which was deeded for $500 was worth at the time of the conveyance, which the grantor claimed was given only as security, $750, if a purchaser could have been found, but that it was then difficult to find purchasers of property in that locality, would not justify a finding that $500 was not its then fair value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 29–42.]

4. TRIAL—LEADING QUESTIONS—GENERAL OBJECTION.

   A question being leading, though calling for competent evidence, the sustaining of a general objection to it is not error.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 194–210.]

   Laughlin and Houghton, JJ., dissenting.

Appeal from Special Term.

Action by Louis Harris against Minnie F. Hirsch, individually and as executrix of and trustee under the will of Ferdinand Hirsch, deceased, impleaded. From a judgment on a decision dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

J. C. Guggenheimer, for appellant.
Emanuel Blumenstiel, for respondents.

INGRAHAM, J. This action was brought to have a deed, absolute on its face, executed on the 7th of July, 1891, declared to be a mortgage to secure the sum of $500, to ascertain the amount due upon said mortgage, and to redeem. The court has found that the conveyance was absolute, executed for a good and valuable consideration, and that the title to the property in fee simple was conveyed to the grantee. The plaintiff insists that this finding was against the weight of evidence. The trial took place in 1906, about 15 years after the execution and delivery of the deed, and the evidence relied upon to prove the fact that the deed was a mortgage was the witness' recollections of conversations and admissions of the defendant's testator, more than 15 years after the conversations and admissions took place. The plaintiff was a sister of the defendant's testator. On the 21st day of October, 1884, the property in question was conveyed to her; the consideration being $335. By a conveyance dated the 7th of July, 1891, the plaintiff, for the expressed consideration of $500, conveyed the property to the defendant's testator, who continued in possession of the property, paying all taxes and assessments upon it, down to the 13th of July, 1901, when he died a resident of the county of New York, leaving a last will and testament in which he bequeathed $2,500 to the plaintiff. No claim was ever made by the plaintiff that this conveyance was a mortgage, or that the plaintiff had any interest in the property, during the life of the defendant's testator, until April 5, 1905, almost four years after his death. In the meantime the plaintiff had received the legacy of $2,500 from the estate of the defendant's testator, and at various times between the execution of this conveyance and the death of the defendant's testator she had received various legacies, without offering to repay the loan or making any arrangement in relation to the indebtedness.

A sister of the plaintiff testified that she recalled in the spring of 1891 a conversation between the defendant's testator and others with respect to a money transaction between himself and the plaintiff; that there were present their mother, the defendant's testator, and the plaintiff; that the defendant's testator went abroad that year on the 28th of May, and before going he said to the plaintiff, "You need

$500;" that the plaintiff said, "I do, very badly," when he said, "Very well, I will lend it to you;" that the plaintiff then said that she had a piece of property in the Bronx which she wished the defendant's testator to take as security; that he said, "Very well;" that this property was the property of the plaintiff any time that she had $500 and wished it back, "and anything it brings, if I should sell it, above $500, is yours"; that she subsequently heard the defendant's testator tell his mother that he wanted her to know that this property belonged to the plaintiff, and that any time she had $500 she could have it back; that the defendant's testator at several times stated to the witness that this property belonged to the plaintiff. The $500 was paid to the plaintiff prior to May 28, 1891. The conveyance of the property to the defendant's testator was dated the 7th of July, and the testator died on the 13th day of July, 1901, more than 10 years thereafter. Other members of the family testified to conversations between the defendant's testator and his relatives, before the defendant's testator went to Europe in 1891, and subsequently, in which he stated that he was making a loan to the plaintiff and had accepted this property as security; that the property belonged to the plaintiff, and whenever she could spare $500 she could have it; and that, if he sold it at any time, anything that he received above the $500 belonged to the plaintiff. The plaintiff's son testified that he heard the defendant's testator speak of this property about a year and a half before his death; that at that time he wanted the witness to ask the plaintiff whether she wanted to sell the property or not; that, if she did, he would attend to the sale of it for her; that the defendant's testator said to the plaintiff on Christmas day, 1900, that the property was going up considerably. It was also proved by a clerk in the employ of the defendant's testator that at the request of the defendant's testator he obtained the tax bills upon this property and paid the taxes; that on several occasions he said that the property belonged to the plaintiff, and that he was paying the taxes and taking care of the property, because she was unable to handle it herself; that he would like to sell the property and make some money for her. There was evidence that this property in 1891 was worth "not over $750, if you could get a purchaser"; that there was very little market at that time; that "you could find purchasers, but not readily"; that the property is now worth about $9,000; that the most marked improvement had occurred within the last two years. It was further proved that the property was assessed for taxation in the year 1891 at $250, which remained without change until 1897, when it was assessed at $700; in 1899 it was assessed at $1,200; in 1900 at $1,500, which continued until 1903, when it was assessed at $3,500; and in 1905 at $7,000, and at the time of the trial $8,500. It further appeared that during this entire period the defendant's testator paid the taxes on the property.

The disposition of this case depends entirely upon the original arrangement that was made between the plaintiff and the defendant's testator. The fact that the defendant's testator intended to give to the plaintiff any profit that was realized upon the final sale of the property, while evidence bearing upon the original arrangement that

was made, would not of itself justify a finding that the transaction was in fact a loan, and not a conveyance of the property. I do not think it can be said upon this evidence that a finding would have been justified that the sum of $500 was not a fair price for the property at the time it was conveyed to the defendant's testator. The opinion of the real estate expert that it was worth $750 if he could find a purchaser, but that purchasers of property in this locality were difficult to obtain, would not justify a finding that $500 was not the fair value of the property. The trial court, who had the advantage of seeing these witnesses and hearing them testify, had to determine whether recollections of these conversations and admissions many years before the testimony was given, and many years before any question was raised as to the ownership of the property, furnished the clear and satisfactory evidence which is required to turn an instrument, absolute on its face, into a mortgage for the securing of a loan of money. The testator is dead, and it is impossible to obtain his version of the transaction. The rule to be applied in the disposition of such a case is stated in Ensign v. Ensign, 120 N. Y. 655, 24 N. E. 942:

"The burden of establishing an oral defeasance to such a deed is an onerous one, resting on whoever alleges it, and its existence, and also its precise terms, must be established by clear and conclusive evidence; otherwise, the strong presumption that the deed expressed the entire contract between the parties to it is not overcome. A conveyance of land in fee, so executed, acknowledged, and recorded, is of too great solemnity and far too much importance to be set aside or converted into a mere security upon loose or uncertain testimony; and it will not be, unless the existence of the alleged oral defeasance is established beyond a reasonable doubt. * * * Whether the evidence in a particular case amounts to proof of the issues tendered is generally a question for the final determination of the court having original jurisdiction to try it, subject to review by the appellate court invested by the statute with power to reexamine the determination of the issues of fact."

I am not prepared to say that the decision of the trial court that the evidence was not sufficient to justify a finding of the existence of this oral defeasance, considering the nature of the testimony required, was against the weight of evidence. The unsatisfactory character of evidence of oral declarations and admissions, made many years before the testimony is given and before its importance is realized, has been often adverted to. That the defendant's testator should have, for over 10 years, paid the taxes and assessments upon the property and treated it as his own, without having taken from the plaintiff any obligation for a loan of money, or having received any recognition of her obligation to repay him the amount that he was constantly called upon to expend to protect the property, and that she allowed such a situation to remain without asking for any written recognition of her interest in the property negatives the idea that the transaction was originally a loan for which the plaintiff was liable. At the time of the death of the testator any obligation to repay this money had been long barred by the statute of limitations. There was nothing in the relation of the parties which tended to show that either of them considered the transaction a loan of money rather than an absolute conveyance of the property; and, whatever the intention of the

testator as to any profits ultimately realized upon the sale of the property, considering the nature of the testimony, I do not think that it can be said that a finding that the transaction originally was not a loan, but an absolute conveyance of the property, was so clearly against the weight of evidence that we are justified in reversing the judgment upon that ground.

The only other question that requires any consideration is the exception to the ruling of the court sustaining an objection to a question asked the plaintiff's son on redirect examination. It seems that this son had received a legacy of about $2,000 from his father. The defendant's testator had had charge of this money, and he proposed that the son should give that money to the plaintiff, to which apparently the son acquiesced. Upon redirect examination, after the son had been fully examined and cross-examined, he was asked the following questions in relation to this transaction:

"Q. It was merely a transfer of $2,000 from your own account to your mother's account, and Mr. Hirsch keeping the money all the time? (Objected to. Sustained.) Q. Did Mr. Hirsch suggest that your mother use any part of that money to pay him? (Objected to. Sustained. Plaintiff excepts.)"

This question was grossly leading, and, considering the nature of the inquiry and the fact that the witness was being asked for declarations of the decedent, it would have been most improper to have allowed such a leading question, in which the counsel framed the alleged declaration that was to be testified to, instead of the witness testifying as to what the deceased actually said. Sustaining the objection to such a question was not error, and while evidence as to declarations made by the defendant's testator would have been undoubtedly competent, as the ruling upon this question was clearly correct, and the defendant did not in any way waive the objection to the form of the question, the court would not be justified in reversing the judgment on account of this exception. The rule in relation to rulings upon general objections is stated in Height v. People, 50 N. Y. 392. It was there said that where the objection was general, stating no grounds, and the decision was with the objector—

"the objection is sufficiently stated, and error does not lie for rejecting the evidence, as the opposite counsel has a right to have the objections stated. If he does not call for them, he is not misled, and may be supposed to understand them. But where the grounds of objection are stated, and the true grounds are suppressed, he may be misled; and in a case like the one at bar, where the true ground, if stated, might have been obviated, that objection will be deemed waived."

Here a plainly improper question was asked. A general objection to it was taken, which the court sustained. There is nothing to show that the plaintiff was at all misled as to the ground of objection, and he then dropped the subject, asking no further questions, and failed to ask that the ground of the objection be stated. In such case it would be clearly improper to reverse the judgment, as the ruling as it stood was correct, and it does not appear in any way that the plaintiff was misled or the defendant waived the real objection to the question.

The finding of the trial court being sustained by the evidence, and there being no error in the record, it follows that the judgment appealed from must be affirmed, with costs.

PATTERSON, P. J., and CLARKE, J., concur.

LAUGHLIN, J. (dissenting). I am of the opinion that the court erred in sustaining the general objections to the second question propounded to the plaintiff's son on redirect examination, set forth in the prevailing opinion. The question as to whether Mr. Hirsch suggested that the witness' mother use any part of the money to pay him, was quite leading; but the objection was not upon that ground, and, had it been, it could have been obviated by asking for the conversation between the witness and Mr. Hirsch, which would have been clearly competent. If Hirsch in the conversation said anything on the subject referred to in the question, it would have been relevant and material. In Turner v. City of Newburgh, 109 N. Y. 301, 16 N. E. 344, 4 Am. St. Rep. 453, the rule is stated, and authorities therefor cited, that it is not error to overrule a general objection, unless there be some ground of objection to the evidence which could not have been obviated, had they been specified, or unless the evidence in its essential nature be incompetent, and the court say:

"The reason for the rule is that, if the ground had been stated, the form of the question might have been changed, or the counsel might have conceded the incompetency of the evidence and have withdrawn the question."

The same rule was announced in Murphy v. People, 63 N. Y. 590–594, where, in a capital case, parol evidence was received of the contents of pleadings over a general objection, and the court say:

"If objection had been taken to the mode of proving the facts, other proof might have been given and the objection have been obviated. In the absence of an objection of this kind, it must be assumed that the question intended to be raised by the objection made was as to the competency of proof of the fact to which the question related, and not to the mode of proving it."

I understand that, where a general objection only is interposed, it is not discretionary with the court whether to receive the evidence in accordance with the rule in Turner v. City of Newburgh and Murphy v. People, supra, or to sustain the objection and exclude it, upon the theory that the question is leading, although the evidence called for may be relevant and material. If it be competent for the court in those circumstances to receive the evidence, I think it is error for the court to exclude it where the question is objectionable only as to form and the evidence is relevant; and it has been so held in numerous cases. Abenheim v. Samuel, 49 Hun, 607, 1 N. Y. Supp. 868; Gerry v. Siebrocht (Sup.) 84 N. Y. Supp. 250. As this evidence was both relevant and material, it cannot be said that its exclusion was not prejudicial to the appellant.

I therefore vote for reversal of the judgment.

HOUGHTON, J., concurs.